The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES, DERIVATIVE & ERISA LITIGATION | No. 2:08-md-1919 MJP |
|  | Lead Case No. C08-0387 MJP |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION | **WAMU OFFICERS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED SECURITIES COMPLAINT** |
| This Document Relates to: ALL ACTIONS | [OD–2] |
|  | *Note on Motion Calendar:* March 30, 2009 |
|  | **ORAL ARGUMENT REQUESTED** |

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED
SECURITIES COMPLAINT [OD–2]
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

# Table of Contents

**Page**

I. INTRODUCTION .................................................................. 1

II. SUMMARY OF THE ALLEGATIONS ................................... 4

    A. Exchange Act Claims ............................................... 7

    B. Securities Act Claims ............................................... 8

III. BACKGROUND ................................................................ 8

    A. Risk-Based Pricing and the Home Lending Market ............ 8

    B. WaMu's Extensive Public Disclosures ........................ 10

IV. STANDARD .................................................................. 13

V. SCIENTER .................................................................. 14

    A. OTS Letter ......................................................... 16

    B. "Motive and Opportunity" ...................................... 17

    C. Confidential Witnesses ........................................... 18

VI. MATERIAL MISSTATEMENT OR ACTIONABLE OMISSION ................................. 20

    A. Originating and Servicing Subprime Mortgages Is Not Securities Fraud .................................................... 21

    B. The Complaint Does Not Allege Specific Facts That Call Into Question the Truth of WaMu's Audited Financial Statements .......... 23

    C. General Statements of Optimism and Predictions Concerning Future Performance Cannot Constitute Materially False or Misleading Statements .......... 25

        1. Confidence in WaMu's Prospects Is Not Securities Fraud ......... 26

        2. The PSLRA's Safe Harbor Provision Shields "Forward-Looking Statements" from Liability ............... 27

VII. LOSS CAUSATION ......................................................... 28

VIII. CONCLUSION ............................................................. 34

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2]—Page i
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

| | |
|---|---|
| | **Table of Authorities** |
| | **Page(s)** |
| | **Cases** |

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
505 F. Supp. 2d 662 (D. Colo. 2007) ................................................................. 15, 17

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ................................................................................................... 13

*California Public Employees' Retirement System v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ...................................................................................... 24

*Davidoff v. Farina*,
2005 WL 2030501 (S.D.N.Y. 2005) ........................................................................... 31

*Dubowski v. Dominion Bankshares Corp.*,
763 F. Supp. 169 (W.D. Va 1991) ............................................................................. 30

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ....................................................................................... 7, 28, 33

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ................................................................................................... 14

*Garber v. Legg Mason, Inc.*,
537 F. Supp. 2d 597 (S.D.N.Y. 2008) ...................................................................... 30

*Glazer Capital Management, LP v. Magistri*,
___ F.3d ___, 2008 WL 5003306 (9th Cir. 2008) ............................................... 17, 32

*Gold v. Morrice*,
2008 WL 467619 (C.D. Cal. 2008) ......................................................................... 6, 7

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .............................................................................. 15, 16

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ..................................................................................... 18

*In re 2007 Novastar Financial, Inc., Sec. Litig.*,
2008 WL 2354367 (W.D. Mo. 2008) ..................................................................... 4, 30

*In re Autodesk, Inc. Sec. Litig.*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) ...................................................................... 18

*In re Calpine Corp. Sec. Litig.*,
288 F. Supp. 2d 1054 (N.D. Cal. 2003) .................................................................... 17

*In re Dot Hill Systems Corp. Sec. Litig.*,
2007 WL 935469 (S.D. Cal. 2007) ............................................................................ 20

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2]—Page ii
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
*-and-*
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

*In re Gilead Sciences Sec. Lit.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................ 29

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ............................................................. 20

*In re Impax Laboratories, Inc. Sec. Litig.*,
   2007 WL 5076983 (N.D. Cal. 2007) ........................................... 30, 31

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
   527 F. Supp. 2d 1033 (N.D. Cal. 2007) ........................................ 26, 27

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ........................................................ 22

*In re Metawave Commc'ns Corp. Sec. Litig.*,
   298 F. Supp. 2d 1056 (W.D. Wash. 2003) ....................................... 19

*In re Northpoint Commc'ns Group, Inc. Sec. Litig.*,
   184 F. Supp. 2d 991 (N.D. Cal. 2001) .............................................. 19

*In re Read-Rite Corp. Sec. Litig.*,
   335 F.3d 843 (9th Cir. 2003) .............................................................. 18

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ....................................................... 14, 15

*In re Splash Tech. Holdings Secs. Litig.*,
   160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................ 26

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) .............................................. 14, 18, 25

*In re Watchguard Sec. Litig.*,
   2006 WL 2927663 (W.D. Wash. 2006) ............................................ 19

*Kas v. Financial General Bankshares, Inc.*,
   796 F.2d 508 (D.C. Cir. 1986) ......................................................... 22

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005) .............................................................. 30

*Linder Dividend Fund, Inc. v. Ernst & Young*,
   880 F. Supp. 49 (D. Mass. 1995) ..................................................... 30

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) .......................................................... 17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
   547 U.S. 71 (2006) ........................................................................... 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .................................................. passim

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2]—Page iii
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
*-and-*
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

*Naye v. Boyd*,
   1986 WL 198 (W.D. Wash. 1986) ...................................................................... 24

*New York State Teachers' Retirement Systems v. Fremont General Corp.*,
   2008 WL 4812021 (C.D. Cal. 2008) ............................................................... 6, 25

*Paracor Finance, Inc. v. General Electric Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ............................................................................. 7

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998) .............................................................. 17

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ..................................................................... passim

*Santa Fe Industries, Inc. v. Green*,
   430 U.S. 462 (1977) .......................................................................................... 22

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ........................................................................ 25, 26

*South Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ....................................................................... 15, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007) ............................................................................... passim

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ........................................................................................ 13

*Weiss v. Amkor Technology, Inc.*,
   527 F. Supp. 2d 938 (D. Ariz. 2007) ....................................................... 29, 31, 33

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) ............................................................. 6, 26

*Werner v. Werner*,
   267 F.3d 288 (3d Cir. 2001) ............................................................................. 22

*Wollrab v. Siebel Systems, Inc.*,
   261 Fed. Appx. 60 (9th Cir. 2007) .................................................................... 16

## Statutes

15 U.S.C. § 77k ...................................................................................................... 8

15 U.S.C. § 77o ...................................................................................................... 8

15 U.S.C. § 78j ....................................................................................................... 7

15 U.S.C. § 78t ....................................................................................................... 7

15 U.S.C. § 78u-4 ............................................................................... 14, 20, 24, 28

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2]—Page iv
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
*-and-*
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

15 U.S.C. § 78u-5 .................................................................................................... 27

Alternative Mortgage Transaction Parity Act of 1982,
    Pub. L. No. 97-320, 96 Stat. 1469 ........................................................................ 9

Depository Institutions Deregulation and Monetary Control Act of 1980,
    Pub. L. No. 96-221, 94 Stat. 132 .......................................................................... 9

Private Securities Litigation Reform Act of 1995,
    Pub. L. No. 104-67, 109 Stat. 737 ...................................................................... 13

## **Rules**

Fed. R. Civ. P. 9 ...................................................................................................... 20

Fed. R. Civ. P. 12 ...................................................................................... 13, 16, 22

## **Regulations**

17 C.F.R. § 240.10b-5 ................................................................................................ 7

U.S. Department of Housing & Urban Development 2005–2008 Housing Goals,
    69 FR 24228 (2004) ............................................................................................... 9

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

# I.    INTRODUCTION

Former Federal Reserve Chairman Alan Greenspan calls the current national banking crisis a "once in a lifetime" event.  Each day brings new reports of turmoil in credit markets, staggering volatility in stock prices, and unprecedented government intervention aimed at stemming the tide of losses that have hit financial institutions.  Washington Mutual, Inc. ("WaMu" or the "Company"), did not escape this economic upheaval.

Plaintiffs seek to recover for WaMu's collapse by attributing industry-wide losses to a "secret fraud" at the Company.  In 1,004 paragraphs spread over 388 pages, Plaintiffs' prolix, repetitive Complaint quotes fragments from essentially every public statement that WaMu made over the past three years.  Plaintiffs then broadly assert that every one of these statements— including every routine quarterly report or analyst call—was "false and misleading" on the theory that it concealed a secret fraud at the nation's largest savings and loan.  In fact, Plaintiffs' allegations of fraud consist of nothing more than colorful allegations that the Company's officers and directors mismanaged the business in ways that the current financial crisis has magnified.

These allegations of mismanagement focus on WaMu's business plan to lend money to subprime borrowers.  Plaintiffs' empty adjectives—"exotic and risky loans," *id.* ¶ 81; "highly irresponsible, volume-driven home lending," *id.* ¶ 105; "extremely loose subprime lending guidelines," *id.* ¶ 380—mask their central contention, *i.e.*, that WaMu should have operated its banking subsidiary as a "sleepy savings and loan," *id.* ¶ 68, making only "traditional, fixed rate loans," *id.* ¶ 67, to borrowers with pristine credit histories.  But the law does not discourage banks from lending to home buyers who do not qualify for traditional loans.  Indeed, WaMu's regulator encouraged the practice, as it opened the possibility of home ownership to a wider segment of the population and permitted WaMu to earn higher returns for investors—in exchange for taking on increased risk.  The fact that the housing market suffered its worst decline in nearly a century, causing WaMu's collapse, does not transform WaMu's subprime lending into securities fraud.

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 1
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

Plaintiffs have dragged thirty-nine defendants into this case, including the six former WaMu officers joining in this motion—Thomas Casey, Stephen Rotella, Ronald Cathcart, David Schneider, John Woods, and Melissa Ballenger (the "WaMu Officers"). Plaintiffs sue four of these former officers—Messrs. Casey, Rotella, Cathcart, and Schneider—on the theory that they made statements that misled the market, even though the Complaint attributes relatively few statements to them. Plaintiffs allege these four officers were "knowledgeable and involved in establishing and approving the Company's lending policies and guidelines," *id.* ¶ 495, and received "annual bonuses . . . dependant [*sic*] on WaMu meeting certain goals and objectives," *id.* ¶ 537. Plaintiffs sue Mr. Woods and Ms. Ballenger not for statements they allegedly made, but as so-called "control persons" because they were "involved in the preparation and discrimination [*sic*] of the Company's financial results," which Plaintiffs label as "false." *Id.* ¶ 791. Shorn of rhetoric, however, Plaintiffs' claims against the WaMu Officers boil down to the fact that they had the misfortune to work for a financial institution that failed—in the midst of the most severe banking crisis in generations.

The Complaint contains two basic types of claims. Counts One, Two and Three allege violations of the Securities Exchange Act of 1934 (the "Exchange Act"), while Counts Four, Five and Six assert claims under the Securities Act of 1933 (the "Securities Act"). Separate motions filed by the Underwriters and Deloitte & Touche address the shortcomings in Plaintiffs' Securities Act claims: the WaMu Officers join those motions. This motion addresses Plaintiffs' Exchange Act claims against the WaMu Officers, which fail for three independent reasons:

*No Scienter*: An Exchange Act complaint must allege facts giving rise to a strong inference of scienter—*i.e.*, a mental state embracing intent to deceive, manipulate, or defraud. This exacting standard requires a court to "take into account plausible opposing inferences" that negate an inference of scienter and to dismiss a complaint that pleads facts showing only that "an inference of scienter rationally ***could*** be drawn." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (emphasis supplied). The facts alleged in the Complaint do not give rise to the requisite strong inference of deceitful intent on the part of the WaMu Officers.

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 2
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

***No Misstatements or Omissions***:  The Complaint does not allege any false or misleading statements by Messrs. Casey, Rotella, Cathcart, or Schneider actionable under the Exchange Act. The Complaint alleges falsity as to dozens of demonstrably true public statements, such as Mr. Casey's routine reporting of financial results pursuant to clean financial statements audited by Deloitte & Touche.  Further, the Complaint does not allege any facts that would lend substance to Plaintiffs' central theory that the WaMu Officers "concealed" the Company's subprime lending.  Instead, documents cited in the Complaint show that WaMu informed investors of the nature and risks of its home lending strategy.  For example, WaMu's 2006 Annual Report—issued March 1, 2007, when its stock was trading above $40 per share— cautioned that WaMu originates and purchases loans to "higher risk borrowers through its subprime mortgage channel"; that borrowers in the subprime mortgage channel tend to have "greater vulnerability" to economic changes, such as "declines in housing prices"; that changed conditions in the subprime mortgage industry "have negatively impacted the Company's business and could continue to do so in the future"; and that "Option ARM" loans have features that may result in "increased credit risk."  Declaration of Stephen M. Rummage ("Rummage Decl.") Ex. 20 at 3, 47.  The rest of the challenged misstatements of the WaMu Officers consist of either "forward-looking statements" that cannot be the basis of a claim or general statements of opinion or optimism that are not actionable as a matter of law.

***No Loss Causation***:  To survive a motion to dismiss, a securities fraud complaint must make specific allegations of loss causation, *i.e.*, "that the practices that the plaintiff contends are fraudulent were [1] ***revealed*** to the market and [2] ***caused*** the resulting losses."  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) (emphasis supplied). The Complaint's theory of loss causation does not rest on the proposition that the market declined because one of the WaMu Officers said something that later was revealed to the market as being false.  Instead, the Complaint depends on the notion that "[t]he foreseeable consequence of lending money to less creditworthy individuals than disclosed to the market is, at some point, incurring larger than expected credit losses and the need to record greater loss reserves."

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 3
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

Coffman Decl. at 4–5.  Under Supreme Court authority, this amorphous allegation does not

satisfy the PSLRA's strict pleading requirements.  Further, even assuming the sufficiency of this

causation theory, Plaintiffs have not alleged a link between the handful of statements by the

WaMu Officers during the relevant time period and the decline in WaMu's stock price.

*        *        *

Plaintiffs' Complaint does not satisfy the exceptionally high standard for pleading

securities fraud.  Instead, it "mistakes quantity for quality."  *Metzler*, 540 F.3d at 1070 (B.

Fletcher, J., for unanimous panel) (affirming dismissal with prejudice of a 181-page, 399-

paragraph securities fraud complaint).  "One might be tempted to think that a complaint spanning

more than 100 pages and consisting of more than 200 paragraphs could not fail to be specific.

The temptation is dangerous and must be resisted."  *In re 2007 Novastar Financial, Inc., Sec.

Litig.*, 2008 WL 2354367 (W.D. Mo. 2008) (dismissing securities complaint against subprime

lender).  Plaintiffs' 388-page, 1,004-paragraph Complaint should be dismissed.

## II.  SUMMARY OF THE ALLEGATIONS

Plaintiffs claim to represent "all persons or entities who purchased or otherwise acquired

securities issued by WaMu and its subsidiaries and that traded on an efficient market during the

period from October 19, 2005 through July 23, 2008 . . . ."  Compl. ¶ 51.  The Complaint names

a total of thirty-nine individuals and companies as defendants:

- Washington Mutual, Inc., now in bankruptcy proceedings under Chapter 11 of the Bankruptcy Code;

- Former CEO and Board member Kerry Killinger;

- Six other former officers:  CFO Thomas Casey, COO Stephen Rotella, Chief Enterprise Risk Officer Ronald Cathcart, Home Loans Division head David Schneider, and controllers John Woods and Melissa Ballenger (collectively, the "WaMu Officers");

- Thirteen Board members:  Anne Farrell, Stephen Frank, Thomas Leppert, Charles Lillis, Phillip Matthews, Regina Montoya, Michael Murphy, Margaret Osmer-McQuade, Mary Pugh, William Reed, Orin Smith, James Stever and Willis Wood;

- WaMu's auditor, Deloitte & Touche; and

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 4
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

- Seventeen entities that underwrote certain specific WaMu debt offerings, including Goldman Sachs, Morgan Stanley, Credit Suisse, Deutsche Bank, Lehman Brothers, UBS, Bank of America, J.P. Morgan Securities, Barclays Capital, Keefe, Bruyette & Woods, Cabrera Capital Markets, Williams Capital Group, Citigroup Global Markets, Greenwich Markets, BNY Capital Markets and Samuel A. Ramirez & Company.

The Complaint rests on the premise that every public statement the Company made during the nearly three-year class period was "false and misleading" because WaMu "misrepresented or omitted" the efficacy of its risk management, *id.* ¶¶ 564–66, 570, 572, 585, 588, 599–600, 604, 610–11, 617–18, 626–27, 631, 645, 647, 649, 661–62, 674, 676, 681, 685, 690, 707, 739, 746, 759, 779, the accuracy of its appraisals, *id.* ¶¶ 560, 565–66, 571, 585, 587–88, 599, 600, 604, 610–11, 617–18, 626–27, 631, 645, 648, 649, 661–62, 674, 676, 680–81, 685, 693, 698–699, 707, the rigor of its underwriting, *id.* ¶¶ 565, 566, 568–72, 576, 585–86, 588, 599–600, 604, 610–11, 617–18, 626–27, 631, 645–46, 649, 661–62, 674, 676, 680–81, 685, 690, 698–99, 707, 715, 739, 746, 779, or the adequacy of its reserves, *id.* ¶¶ 566, 588, 599–600, 604, 611, 618, 627, 632, 649, 662, 676, 681, 685, 690, 715, 739, 746, 759, 779. In short, the Complaint asserts that the Company misled investors by not "revealing the full extent of WaMu's actual plans and business practices during the Class Period," including its "concerted efforts to transform itself from a sleepy savings and loan," *id.* ¶ 68, by marketing "exotic and risky loans," *id.* ¶ 81, through "highly irresponsible, volume-driven home lending," *id.* ¶ 105, all the while using "extremely loose subprime lending guidelines," *id.* ¶ 380.

Plaintiffs claim to have undertaken an "unprecedented" investigation before filing their Complaint. *Id.* ¶ 2. Many of their allegations, however, have appeared (almost verbatim) in other complaints filed by the same Plaintiffs' counsel against other companies once involved in subprime lending. In their complaint against bankrupt subprime lender Fremont General Corporation, for example, Plaintiffs' counsel challenged the defendants' "repeated statements regarding the purported quality of Fremont's underwriting, loan quality, and loan performance during the Class Period," opining that "it was only a matter of time before [Fremont's] extremely loose lending practices—driven by aggressive volume targets and financial incentives—would

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 5
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

result in substantially increased mortgage delinquencies and material losses for Fremont investors." *New York State Teachers' Retirement Systems v. Fremont General Corp.*, 2008 WL 4812021, at *2 (C.D. Cal. 2008) ("*Fremont*") (quoting complaint filed by Bernstein Litowitz).

Plaintiffs' Complaint here parrots much of what their lawyers alleged in *Fremont*. *Compare, e.g.*, *id*. at *5 ("'Fremont's loan underwriters [were paid] incentive compensation based on volume.'") (quoting complaint), *with* Compl. ¶ 91 (alleging "rich incentives for [WaMu's] salespeople to originate the maximum number of loans possible"). Both pleadings contain the same stock phrases, including "highly irresponsible, volume-driven home lending" (*id*. ¶ 105), "extremely loose lending practices" (*Fremont*, 2008 WL 4812021, at *2), "highly aggressive lending practices" (Compl. ¶ 572), and "aggressive volume targets" (*Fremont*, 2008 WL 4812021, at *2). But the district court dismissed *Fremont* on the pleadings:

> The Court has scoured the 175 pages of the [amended complaint] in an effort to link Lead Plaintiff's allegations of specific statements with the alleged reason(s) those statements are misleading . . . . [I]n many cases, the internal cross references to other allegations in the [amended complaint] fail to substantiate Lead Plaintiff's conclusory allegations that the statements were false and, in nearly all cases, they fail to illuminate why or how the falsity was material.

*Id*. at *5 (citing *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1244 (N.D. Cal. 1998), for the proposition that plaintiffs "failed to craft a Complaint in such a way that a reader can, without undue effort, divine why each alleged statement was false or misleading").

Another federal judge in the Central District of California reached a similar conclusion with respect to the complaint these same lawyers filed against bankrupt subprime lender New Century. *See Gold v. Morrice*, 2008 WL 467619, at *1 (C.D. Cal. 2008) (Pregerson, J.). There, too, Plaintiffs' counsel alleged a scheme in which New Century "began originating loans with risky increased [loan to values] and began to lower credit standards starting in 2003." Rummage Decl. Ex. 27 (*Gold* Compl.) ¶ 112. Plaintiffs wrote that "New Century's loans over the past few years were getting 'riskier and riskier,' especially with 100% financing or 80/20 loans," as "[only] volume mattered and over time it 'became a numbers game.'" *Id*. ¶ 128. Judge

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 6
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

Pregerson dismissed the pleading because it "lack[ed] clarity in articulating the grounds for its claims" and failed to "clearly identify . . . which of the factual allegations support an inference that particular statements are false or misleading." *Gold*, 2008 WL 467619, at *2. "The Court should not have to comb through the complaint to identify reasonable inferences from the factual allegations to the legal conclusions." *Id*. at *3 n.6.

With that framework in mind, the WaMu Officers turn to Plaintiffs' specific allegations.

## A.      Exchange Act Claims

The first three counts of the Complaint arise under the Exchange Act and relate to the trading price of WaMu common stock (*i.e.*, shareholders' equity). Court-appointed lead plaintiff Ontario claims to have purchased WaMu common stock during the class period and purports to bring three causes of action under the Exchange Act.

Count One asserts that four of the WaMu Officers—Messrs. Casey, Rotella, Cathcart, and Schneider—are liable under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiffs must allege six elements to state a Rule 10b-5 claim:

> (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation"; (5) economic loss; and (6) "loss causation," *i.e.*, a causal connection between the material misrepresentation and the loss.

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (citations omitted).

Count Two purports to state a "control person" liability claim against all six of the WaMu Officers under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), and is thus derivative of Count One. (Count Three asserts the same "control person" claim against WaMu's Board of Directors). "To establish 'controlling person' liability, the plaintiff must show that a primary violation was committed and that the defendant 'directly or indirectly' controlled the violator." *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2]—Page 7
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

## B. Securities Act Claims

The final three counts of the Complaint purport to arise under the Securities Act. These allegations do not concern shareholders' equity in WaMu. Instead, they challenge registration statements for four specific debt offerings—in August 2006, September 2006, October 2007 and December 2007. Compl. ¶ 817. (The last two debt offerings, of course, occurred *after* Plaintiffs allege that WaMu revealed the supposed fraud to the market.) Count Four (alleging violation of Section 11 of the Securities Act, 15 U.S.C. § 77k) and Count Six (alleging violation of Section 15 of the Securities Act, 15 U.S.C. § 77o) name all six of the WaMu Officers as defendants.

The Court should dismiss Plaintiffs' Securities Act claims for the reasons set out in the motions filed by Underwriters and Deloitte & Touche. The WaMu Officers join in those motions.

## III. BACKGROUND

## A. Risk-Based Pricing and the Home Lending Market

Following the collapse of the residential real estate market, "subprime lending" has a bad reputation. At its core, however, lending to non-prime borrowers amounts to just one form of risk-based pricing. Rather than offering one, "off the shelf" loan product with standard terms (such as a 30-year fixed-rate first-lien mortgage requiring a 20% down payment and a strong credit score), risk-based pricing allows lenders to offer home loans to borrowers with a higher potential for repayment difficulties by matching price to risk. Thus, a borrower who cannot afford to make a 20% down payment might qualify for a no- or low-down payment mortgage, but with an increased interest rate or less favorable terms (such as prepayment penalties or "balloon" payments). Similarly, borrowers who cannot meet the strict income documentation requirements of traditional mortgages (because, for example, of self-employment or a recent career change) might qualify for a loan that compensates for the risk associated with less stringent documentation requirements by specifying a higher interest rate.

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 8
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

1    On a portfolio-wide basis, risk-based pricing allows banks to offset increased default

2    rates (from lower-quality loans) with the increased income generated from those loans.  The

3    federal government explained the logic of risk-based pricing in 2004:

4                [R]isk-based pricing enables mortgage lenders to offer each
5                borrower an individualized interest rate based on his or her risk.
             Or, more broadly, to offer interest rates based on whether or not
6                the borrower falls into a certain category of risk, such as specific
             loan-to-value and FICO score combination or specified mortgage
7                score range.

8    U.S. Department of Housing & Urban Development 2005–2008 Housing Goals, 69 FR 24228,

9    24269 (2004).

10        Although Plaintiffs imply a rigid distinction between "prime" and "subprime" loans

11   based solely on an applicant's credit score, *see* Compl. ¶¶ 316–21, federal regulatory guidance

12   cited in the Complaint shows that, in fact, there are no "specific parameters for all subprime

13   borrowers," who will "display a range of credit risk characteristics."  Rummage Decl. Ex. 3

14   (Expanded Guidance for Subprime Lending Programs) 2–3.  Indeed, regulators warned that bank

15   examiners "should not automatically classify or place loans in special mention merely because

16   they are subprime." *Id.* at 9.  WaMu echoed this guidance in its public statements, noting that

17   "[m]any factors or loan attributes are used to predict and to monitor credit risk in the Company's

18   real estate secured loan portfolios, including borrowers' debt-to-income ratios when loans are

19   made, borrowers' credit scores, loan-to-value ratios and, with respect to residential loans,

20   housing prices."  Rummage Decl. Ex. 18 (2006 Annual Report) at 46.  "Management is

21   responsible for balancing risk and reward in determining and executing business strategies." *Id.*

22        Federal law and housing policy for decades has encouraged (or at least permitted) risk-

23   based loan pricing.  In the early 1980s, Congress preempted state interest rate caps for first-lien

24   home loans and permitted the use of variable interest rates, balloon payments and negative

25   amortization.  *See* Depository Institutions Deregulation and Monetary Control Act of 1980, Pub.

26   L. No. 96-221, 94 Stat. 132; Alternative Mortgage Transaction Parity Act of 1982, Pub. L. No.

27   97-320, 96 Stat. 1469.  Nearly four years before the putative class period, WaMu's primary

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 9
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

regulator— the Office of Thrift Supervision ("OTS")—reaffirmed that "subprime lending can expand credit access for consumers while also offering attractive returns to the institution." Rummage Decl. Ex. 3 (OTS Memorandum dated February 2, 2001) at 1; *see also* Rummage Decl. Ex. 1 (Interagency Guidance on Subprime Lending 217A) at 1–2 ( "in recent years a number of lenders have extended their risk selection standards to attract lower credit quality accounts, often referred to as subprime loans . . . . These loans can be profitable, provided the price charged by the lender is sufficient to cover higher loan loss rates and overhead costs related to underwriting, servicing, and collecting the loans.").

**B.     WaMu's Extensive Public Disclosures**

Plaintiffs imply that WaMu surreptitiously entered the subprime market or hid the nature and extent of its subprime lending operations.  The Company's public filings (all of which the Court may judicially notice and consider on this motion to dismiss) show something very different.  Shortly before the putative class period, WaMu filed its 2004 Annual Report with the SEC, setting out clearly and plainly the risks that accompanied WaMu's "emphasis" on subprime lending.  Under the bolded, italicized heading "***A continuing emphasis on subprime lending could negatively impact our business***," the Annual Report told investors:

> The Company began ***accelerating purchases of subprime loans*** in 2003, increased its specialty mortgage finance portfolio significantly in 2004 ***and intends to continue to grow this portfolio in the future****. . . .*  However, if there were a downturn in the national economy or local economies where we do business, ***the credit performance of this portfolio could suffer***, with a potential adverse effect on our earnings.

Rummage Decl. Ex. 4 (2004 Annual Report) at 3 (emphasis supplied).  The report went on to note a sharp increase in subprime loans, from "$12.97 billion at the end of 2003 . . . to $19.14 billion at December 31, 2004"—a 47.6% increase in a single year. *Id.* at 15. *See also id.* at 48 (noting "strong loan portfolio growth, especially in the higher-risk purchased subprime portfolio").

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 10
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

1    WaMu's Annual Report for 2005 described the risks presented by the subprime market

2 with similar clarity and prescience. Under the italicized heading "*Risks related to subprime*

3 *lending*," WaMu reported:

4          The Company remains committed to the subprime mortgage
           market and ***intends to increase the loan volume of its subprime***
5          ***mortgage business***, Long Beach Mortgage Company, and to
           maintain the size of its purchased subprime home loan
6          portfolio. . . . If unemployment were to rise or either ***a slowdown***
           ***in housing price appreciation or outright declines in housing***
7          ***prices were to occur***, subprime borrowers, who tend to have
           greater vulnerability to such changes than prime borrowers, ***may be***
8          ***unable to repay their loans*** and the credit performance of the
           Company's subprime portfolios could suffer, with a potential
9          adverse effect on earnings.

10   Rummage Decl. Ex. 11 (2005 Annual Report) at 5 (emphasis supplied).

11       These warnings (which WaMu repeated in numerous subsequent filings and public

12 statements) went well beyond the bare fact that WaMu loaned money to subprime borrowers.

13 WaMu also gave investors comprehensive, detailed information about the types of loan products

14 it was selling and the risks that accompanied those products. For example, under the heading

15 "Home Loans with Loan-to-Value Ratios Greater Than 80 percent Without Private Mortgage

16 Insurance or Government Guarantees," WaMu warned investors of the following important facts:

17        • "Loan-to-value ratios are a key determinant of future
            performance";
18
          • "Home loans with loan-to-value ratios of greater than 80 percent
19          at origination . . . expose the Company to greater credit risk . . .
            because, in general, both default risk and the severity of loss is
20          higher when borrowers have less equity to protect in the event of
            foreclosure";
21
          • "At December 31, 2005, home loans held in portfolio with these
22          features amounted to ***$9.01 billion*** and the weighted average
            loan-to-value ratio at origination of such loans was ***88 percent***";
23          and
          • "***Substantially all of these loans were made to subprime***
24          ***borrowers***, including $6.91 billion of purchased subprime loans."

25   Rummage Decl. Ex. 11 (2005 Annual Report) at 57 (emphasis supplied). WaMu cautioned

26 investors that, given these loan characteristics, "[a] prolonged economic downturn could increase

27 the number of customers who become delinquent or default on their loans. . . ." *Id*. at 5.

WAMU OFFICERS' MOTION                SIMPSON THACHER & BARTLETT LLP        DAVIS WRIGHT TREMAINE LLP
TO DISMISS THE SECURITIES                  425 Lexington Avenue             1201 Third Avenue, Suite 2200
COMPLAINT [OD-2] —Page 11                  New York, New York 10017          Seattle, Washington 98101
Case No. 2:08-md-01919-MJP                        -and-                       Tel.: (206) 622-3150
Lead Case No. C08-0387-MJP             1999 Avenue of the Stars, 29th Floor    Fax: (206) 757-7700
                                          Los Angeles, California 90067

The Company did not limit disclosure of its subprime lending to annual reports and other public filings. On a July 20, 2005, conference call about the Company's second quarter 2005 earnings, for example, WaMu President and Chief Operating Officer Stephen Rotella highlighted "increased lending volume [of] 17%" from just the prior quarter and noted that WaMu "set all-time record volumes at our subprime lender, Long Beach Mortgage Company."

> Long Beach Mortgage Company produced **record volume** for the second straight quarter with total loan volume of 8.2 billion, which was **more than double the volume from a year ago**. . . . We are now working on **expanding** their reach by adding new account executives, expanding fulfillment centers to accommodate volume and enhancing call centers and direct mail programs.

Rummage Decl. Ex. 5 (July 20, 2005 Conference Call Transcript) at 4, 6 (emphasis supplied). The credit risk of the applicants responsible for this sizeable increase in lending was no secret. Indeed, Mr. Rotella announced that WaMu saw "a sizeable opportunity" in "delivery of subprime loans to appropriate customers **who have been turned down by our prime mortgage** or home equity [programs]." *Id.* at 6 (emphasis supplied). No reasonable investor could have missed the message that subprime lending targeted borrowers who would not qualify for traditional loans—but that WaMu planned to keep growing its share of the subprime market. Rather, the substantial rewards reaped by WaMu investors from steady gains in the Company's stock price were inextricably linked to the risks of lending money to borrowers who were less likely to repay, but who therefore paid higher interest rates.

Further, as with every public filing, conference call, presentation, or other communication made to investors during the class period, investors were cautioned that "there are a number of factors that may cause actual results in the future to be different from our current expectations." Rummage Decl. Ex. 8. Before Mr. Rotella spoke, WaMu's vice-president for investor relations referred investors to the following disclaimer:

> Our Form 10-K and other documents that we file with the Securities and Exchange Commission have forward-looking statements. In addition, our senior management may make forward-looking statements orally to analysts, investors, the media and others. . . . Forward-looking statements provide our

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 12
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

expectations or predictions of future conditions, events or results. . . . ***By their nature, forward-looking statements are subject to risks and uncertainties***. . . . There are a number of factors, many of which are beyond our control, which could cause actual conditions, events or results to differ significantly from those described in the forward-looking statements.

Rummage Decl. Ex. 4 (2004 Annual Report) at 2 (emphasis supplied).

The disclosures and warnings described above comprise only a subset of what WaMu conveyed to potential investors during the class period.  For the convenience of the Court, Appendix A sets forth verbatim disclosures appearing in public documents on which the Complaint relies, excerpts of which appear as Exhibits to the Rummage Declaration.

## IV.     STANDARD

Congress and the courts have applied strict rules of pleading to allegations of securities fraud.  The Supreme Court observed more than thirty years ago that "litigation under Rule 10b-5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 (1975).  A series of appellate decisions and ultimately a special federal statute—the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 ("PSLRA")—therefore imposed heightened pleading burdens to ensure that claims of securities fraud are "anchor[ed] in demonstrable fact," *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092 (1991), rather than speculation and surmise.

Today, "plaintiffs in private securities fraud class actions face formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P. 12(b)(6)." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1054–55 (9th Cir. 2008).  The PSLRA's stringent standards reflect Congress's judgment that lax "notice pleading" standards had "resulted in extortionate settlements, chilled any discussion of issuers' future prospects, and deterred qualified individuals from serving on boards of directors." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006).  *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2512 (2007) (rejecting Seventh Amendment challenge to PSLRA's

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 13
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

strict pleading standards, because "Congress, as creator of federal statutory claims, has power to prescribe what must be pleaded to state the claim" and "to allow, disallow, or shape the contours of" securities fraud actions). "The purpose of [the PSLRA's] heightened pleading requirement [i]s generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'" *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084–85 (9th Cir. 2002) (citing *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999)). In the sections that follow, the WaMu Officers discuss the standards that govern pleading of scienter, falsity, and loss causation, and thereby show that this Complaint alleges nothing more than fraud by hindsight.

## V.     SCIENTER

"To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2507 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976)). The PSLRA requires Plaintiffs, in their initial pleading, to "state with particularity facts giving rise to a ***strong*** inference" that each defendant acted with the requisite intent. 15 U.S.C. § 78u-4(b)(2) (emphasis supplied). The Supreme Court recently explained that Congress's use of the adjective "strong" to describe the required inference makes this a comparative inquiry:

> [A] court must take into account plausible opposing inferences . . . . Congress did not merely require plaintiffs to provide a factual basis for their scienter allegations, *i.e.*, to allege facts from which an inference of scienter rationally ***could*** be drawn. Instead, Congress required plaintiffs to plead with particularity facts that give rise to a "strong"—*i.e.*, a powerful or cogent—inference.
>
> The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, ***a court must consider plausible nonculpable explanations for the defendant's conduct*** . . . .

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 14
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

*Tellabs*, 127 S. Ct. at 2509–10 (second emphasis supplied; citations omitted). *See, e.g.*, *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002) ("To accept plaintiffs' argument that the court is required to consider only inferences favorable to their position would be to eviscerate the PSLRA's strong inference requirement by allowing plaintiffs to plead in a vacuum.").

The Ninth Circuit has been particularly insistent that securities plaintiffs plead scienter with the requisite specificity. A plaintiff in the Ninth Circuit "can no longer aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Silicon Graphics*, 183 F.3d at 979. Courts must assess the sufficiency of allegations of scienter "with a practical and common-sense perspective," as "the federal courts certainly need not close their eyes" to the realities of the particular company, industry and economic climate. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

Plaintiffs spread their scienter allegations against the WaMu Officers across 57 rambling paragraphs (Compl. ¶¶ 482–539) that say little. The scienter allegations fall into four categories:

- ***Pre-Class Period Letter to OTS***: WaMu sent a letter to OTS requesting permission to use "newer valuation technologies" to appraise loans under $500,000, Compl. ¶¶ 483–85;

- ***"Motive"***: The WaMu Officers earned their living by working at the Company and, like most executives, were offered incentives linked to WaMu's financial performance, *id.* ¶¶ 537–39;

- ***"Opportunity"***: The Company's management team was experienced, knew a lot about banking, and tried to do their jobs by closely monitoring the business, *id.* ¶¶ 500–536; and

- ***Confidential Witnesses***: "CW 79" and "CW 80" claim to be former employees who know that "senior management . . . was acutely aware of . . . undisclosed problems" at WaMu, *id.* ¶¶ 486-99.

The Complaint does not claim that ***any*** of the WaMu Officers engaged in suspicious insider trading. *Cf. id.* ¶¶ 540–56 (making such allegations against another defendant). The absence of stock sales by the WaMu Officers "dulls allegations of fraudulent motive" and is "inconsistent with an intent to defraud shareholders." *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 678 (D. Colo. 2007) (collecting cases). "When insiders miss the boat," their

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 15
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

1  conduct does "not support an inference that they are preying on ribbon clerks who do not know

2  what the insiders know."  *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001).

3       The WaMu Officers will address each of these scienter allegations in turn.

4  **A.     OTS Letter**

5       Plaintiffs' lead scienter allegation—that, before the class period, WaMu sought (but did

6  not receive) permission to match its unregulated competitors by using "newer valuation

7  technologies" instead of a "full appraisal" for loans under $500,000, Compl. ¶¶ 483–85—does

8  not contribute to any "strong inference" that any of the WaMu Officers acted with the requisite

9  culpable state of mind.  The allegations do not mention any WaMu Officer, or suggest that any

10 of them had a role in (or even knew about) the request for a larger exemption as to appraisal

11 techniques on certain loans.

12      In any event, the Ninth Circuit rejected a similar argument in *Gompper*, where plaintiffs

13 tried to "spin" the company's vigorous defense of litigation positions in patent matters into an

14 inference that the company suspected that the patents were invalid.  298 F.3d at 895.  In

15 affirming the district court's dismissal of the case, the Ninth Circuit held that the far more

16 plausible explanation was that the company "fervently believed in the viability of the patent

17 portfolio, and litigated its defense with ferocity."  *Id.* at 896.  Here, Plaintiffs ask the Court to

18 infer nefarious conduct from the lawful and proper act of requesting a regulatory larger

19 exemption—when the far more plausible explanation is that the Company wanted to follow its

20 regulator's guidance but believed that guidance, in this instance, put it at a competitive

21 disadvantage.  *See* Compl. ¶ 485 (current exemption causes a "significant competitive

22 disadvantage").  An inference of scienter is as unwarranted here as it was in *Gompper*.  *See also*

23 *Wollrab v. Siebel Systems, Inc.*, 261 Fed. Appx. 60, 61 (9th Cir. 2007) (no scienter where

24 defendant's conduct "was also consistent with good business practices") (affirming Rule

25 12(b)(6) dismissal).

26

27

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 16
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

## B.  "Motive and Opportunity"

The Complaint alleges that Messrs. Casey, Rotella, Cathcart, and Schneider had "motive and opportunity to perpetrate fraud" because they received performance-based bonuses. Compl. ¶¶ 537–39. But "[a]ll corporate managers share a desire for their companies to appear successful. That desire does not comprise a motive for fraud." *Andropolis*, 505 F. Supp. 2d at 690. "If scienter could be pleaded merely by alleging that officers and directors possess motive and opportunity to enhance a company's business prospects, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (quotation omitted). The "motive to increase . . . compensation is . . . insufficient" to create a strong inference of scienter. *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1087 (N.D. Cal. 2003); *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 833 (C.D. Cal. 1998). Indeed, if a plaintiff could plead scienter based on compensation rights, a "plaintiff [could] automatically establish a strong inference of scienter whenever an executive's compensation [was] tied to performance or stock price of the company for which he or she works"; such a theory would be flatly "inconsistent with the intent of the PSLRA." *Calpine*, 288 F. Supp. 2d at 1087. *See also Glazer Capital Management, LP v. Magistri*, ___ F.3d ___, 2008 WL 5003306, at *10 (9th Cir. 2008) ("evidence of a personal profit motive on the part of officers and directors contemplating a merger is insufficient to raise a strong inference of scienter").

As part of their motive and opportunity allegations, Plaintiffs assert that WaMu's top management "possessed extensive industry, accounting and/or finance experience and education," Compl. ¶ 536; "closely monitored and managed WaMu's prime and subprime home lending underwriting guidelines and operations," *id.* ¶ 529; "received regular and special reports concerning WaMu's lending practices," *id.* ¶¶ 500–28; and carefully planned and prepared for presentations to stockholders, *id.* ¶¶ 486–99. But these facts do not give rise to a strong inference that the WaMu Officers knew that any statement attributed to them was false when made; to the contrary, these allegations lead to the more likely inference (under the comparative

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 17
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

inquiry dictated by *Tellabs*) that WaMu's Board of Directors selected an experienced, dedicated, talented, and knowledgeable management team—a laudable fact that provides no basis for a securities claim.

Indeed, Plaintiffs' effort to draw a "strong inference" of scienter from management's knowledge and experience runs counter to settled law in this Circuit. If this type of allegation were to suffice, then "any corporate officer"—at any company in the country—"could be said to possess the requisite knowledge by virtue of his or her position." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000). The Ninth Circuit has squarely rejected that proposition. *See, e.g.*, *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003) (allegations of job duties do not satisfy the requirement of facts leading to a "strong inference" of scienter); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1088 (9th Cir. 2002) ("allowing a plaintiff to go forward with a case based on general allegations of negative internal reports would expose all those companies to securities litigation whenever their stock prices dropped") (quotation omitted).

## C. Confidential Witnesses

Dressing up "motive and opportunity" allegations with statements from "confidential witnesses" does not make motive and opportunity a viable theory of scienter. In light of the PSLRA's heightened pleading standards, statements of confidential witnesses have limited utility when evaluating the competing inferences that a court must consider in assessing scienter. "It is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007).

Regardless, none of Plaintiffs' "confidential witnesses" says anything germane to the state of mind of the four WaMu Officers named in the Exchange Act claims. Most notably, of the more than 80 confidential witnesses, not even one claims to have given any WaMu Officer "the true facts before [a] false statement was made" or "information directly at odds with an

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 18
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

alleged misrepresentation." *In re Northpoint Commc'ns Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 997–98 (N.D. Cal. 2001). Plaintiffs' allegations relating to "CW 79" are illustrative. This individual claims to have been present at meetings with the officers of the Company in preparation for the 2006 Investor Day; during those meetings, the officers allegedly discussed what level of detail should be disclosed and "***discussed the need to avoid making any statements that might give rise to liability under the federal securities laws***." Compl. ¶ 493 (emphasis supplied). The notion that these discussions could allow the Court to derive a strong inference of scienter verges on the bizarre; a "conspiracy" to comply with the law cannot possibly raise an inference of fraudulent or unlawful conduct. *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1073 (W.D. Wash. 2003) (no inference of scienter from confidential witness's statement that "Company executives" would receive reports about specific trial failures, because alleged confidential witness provided no details about reports).

Plaintiffs' references to "CW 80" likewise illustrate the shortcomings in their scienter allegations. According to "CW 80" his relationship with Mr. Casey "'progressively worsened due to disputes over accounting policy.'" Compl. ¶ 497. But that allegation lacks any substantive content bearing on Mr. Casey's state of mind vis-à-vis the investment community; it says nothing about the relative merits of the different views on accounting policy; and it lacks specificity as to whether Mr. Casey ever made a contemporaneous public statement at odds with CW 80's allegations. Indeed, even confidential witnesses' more potent allegations that a CFO's "financial results may not have been legitimately derived" do not give rise to strong inference of scienter. *See, e.g., In re Watchguard Sec. Litig.*, 2006 WL 2927663, at *5 (W.D. Wash. 2006). For the same reason, "CW 80's" vague statement that he "believed" WaMu's "'reserving process was diminished as the finance function exerted greater control'" says nothing that could lead the Court to a strong inference of Mr. Casey's culpable state of mind. Compl. ¶ 498. *See, e.g., Watchguard*, 2006 WL 2927663, at *3 (confidential witness's conclusory allegation that CFO was "very controlling" and "involved in everything" do not give rise to strong inference).

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 19
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

Plaintiffs may satisfy their scienter pleading obligation if they couple allegations of corporate responsibility with other allegations that, under a "holistic review," give rise to a strong inference of scienter. *South Ferry*, 542 F.3d at 784. But the confidential witness statements here do not satisfy that pleading obligation. Most notably, despite claiming to have interviewed scores of former WaMu employees, Plaintiffs have not alleged contemporaneous facts known by any of the WaMu Officers that contradicted their public statements. Indeed, in an apparent effort to add bulk to their Complaint, Plaintiffs even summarize confidential witness statements that show WaMu personnel doing exactly what they should. *See, e.g.*, Compl. ¶¶ 513–15 (describing quality assurance reviews and recommendations). In short, even if one credits the confidential witness statements, the Complaint smacks of the very sort of fraud by hindsight that Congress passed the PSLRA to avoid. Plaintiffs have not pleaded facts giving rise to a strong inference of scienter.

## VI.    MATERIAL MISSTATEMENT OR ACTIONABLE OMISSION

"The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler Investors, GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). Plaintiffs must set out each claimed misrepresentation or omission by each defendant separately and must specify for each "the reason or reasons **why** the statement is misleading." 15 U.S.C. § 78u-4(b)(1) (emphasis supplied); *accord In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548–49 (9th Cir. 1994) (*en banc*) (particularity requirement of Rule 9(b) requires "an explanation as to why [each] disputed statement was untrue or misleading when made") (citations omitted). Instead of identifying the "alleged false statement," the "reasons supporting actual falsity," and the "particular facts supporting" the allegation, "the Complaint's lack of organization drowns these distinctions in an ocean of redundancy, cross-reference, and irrelevant factual overkill." *In re Dot Hill Systems Corp. Sec. Litig.*, 2007 WL 935469, at *2 (S.D. Cal. 2007).

Plaintiffs' Complaint contains 129 paragraphs collected under the heading "Defendants' Materially Misleading Omissions and False Statements." Compl. ¶¶ 557–686; *see also id.* ¶¶ 776(iv)–(viii) (identifying alleged false statements and omissions by Messrs. Casey, Cathcart,

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

1  Rotella and Schneider).  For the convenience of the Court, Appendix B collects and sets forth

2  verbatim the statements alleged in the Complaint attributed to the WaMu Officers.

3  **A.      Originating and Servicing Subprime Mortgages Is Not Securities Fraud**

4  The Complaint tries to sell a story of a "sleepy savings and loan" (Compl. ¶ 68) that used

5  to make only "traditional, fixed rate loans" (*id*. ¶ 67) to borrowers with pristine credit histories

6  suddenly deciding, on the sly, to offer "exotic and risky loans" (*id*. ¶ 81) as part of a foray into

7  "highly irresponsible, volume-driven home lending" (*id*. ¶ 105).  Yet there is nothing fraudulent

8  or improper about originating and servicing subprime loans.  WaMu repeatedly informed

9  investors of its business model and accurately conveyed the risks involved in lending money to

10  people with subprime credit, who might not be able to repay:

11  The Company *remains committed to the subprime mortgage*
    *market and intends to increase the loan volume of its subprime*
12  *mortgage business*, Long Beach Mortgage Company, and to
    maintain the size of its purchased subprime home loan
13  portfolio. . . . If unemployment were to rise or either a slowdown
    in housing price appreciation or outright declines in housing prices
14  were to occur, subprime borrowers, who tend to have greater
    vulnerability to such changes than prime borrowers, *may be*
15  *unable to repay their loans* and the credit performance of the
    Company's subprime portfolios could suffer, with a potential
16  adverse effect on earnings.

17  Rummage Decl. Ex. 12 (2005 Annual Report) at 5 (emphasis supplied).  (For the convenience of

18  the Court, Appendix A sets forth verbatim disclosures appearing in public documents on which

19  the Complaint relies.  The relevant excerpts appear as Exhibits to the Rummage Declaration.)

20  Given the wealth of disclosures and the transparency of the Company's operations and

21  plans for future growth, no reasonable investor could have misunderstood the scope and depth of

22  WaMu's involvement in subprime lending.  That WaMu's subprime lending ultimately led to

23  extensive losses in the financial markets does not mean that the Company or the WaMu officers

24  committed "fraud."  Instead, Plaintiffs' four core allegations of impropriety—"toothless" risk

25  management, "inflated" appraisals, "lax" underwriting, and "inadequate" reserves, Compl. ¶ 2—

26  amount to nothing more than generalized (and ultimately inaccurate) claims that its officers and

27  directors mismanaged the business.  But "[c]alling executives bad managers, or bad forecasters,

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

does not plead fraud." *Ronconi*, 253 F.3d at 437. Congress never intended "to bring within the scope of [the securities laws] instances of corporate mismanagement" or unfair treatment by a fiduciary. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477 (1977).

Nor can allegations of corporate mismanagement be "federalized" into securities fraud claims simply by alleging that defendants should have told the world about the mismanagement in their public filings. *See, e.g.*, *Werner v. Werner*, 267 F.3d 288, 298–99 (3d Cir. 2001) (dismissing claim that company engaged in securities fraud by "fail[ing] to expose the management defendants' breach of state law duties"). "[A] plaintiff may not 'bootstrap' a claim of breach of fiduciary duty into a federal securities claim by alleging that directors failed to disclose that breach of fiduciary duty." *Kas v. Financial General Bankshares, Inc.*, 796 F.2d 508, 513 (D.C. Cir. 1986) (citation omitted). This principle applies with even greater force when a complaint simply incorporates by reference allegations of mismanagement or breach of state law made in a pleading filed by another party in another case—as with this Complaint's wholesale adoption of the New York Attorney General's allegations concerning appraisal practices. *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78–79 (S.D.N.Y. 2003) ("references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure") (citations omitted).

In the footnote, the WaMu Officers identify the paragraphs of the Complaint that allege nothing more than mismanagement, often on the theory that WaMu personnel to follow policies.[1] For the Court's convenience, Appendix B sets forth verbatim the allegations in question.

---

[1] Cathcart: Compl. ¶¶ 612; 614; Schneider: Compl. ¶¶ 567; 568; 613; 699; Rotella: Compl. ¶¶ 576; 577; 587; 595; 599; 607; 614; 690; Casey: Compl. ¶¶ 561; 562; 563; 564; 576; 578; 579; 580; 582; 583; 584; 593; 594; 596; 597; 598; 607; 608; 609; 621; 624; 625; 638; 639; 640; 641; 642; 643; 644; 657; 658; 659; 671; 672; 673; 687; 690.

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 22
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

## B. The Complaint Does Not Allege Specific Facts That Call Into Question the Truth of WaMu's Audited Financial Statements

The Complaint labels as "false and misleading" various routine statements of WaMu's quarterly and annual financial results and the figures that underlie those results. The following allegations are typical:

- "In the 2005 Form 10-K, the Company also reported a full-year provision for loan and lease losses of $316 million in 2005, compared with a provision of $209 million in 2004. According to the 2005 Form 10-K, this higher provision included $195 million that was related to the Company's acquisition of the Company's new credit card operations in the fourth quarter. The remaining provision related to the Company's ongoing risk management efforts was $121 million." Compl. ¶ 579.

- "Defendant Casey reassured investors that the overwhelming majority of the Company's Option ARM portfolio had LTV ratios below 80%. He noted that . . . 'only about 8% of current portfolio of option ARMs had LTV ratios at origination in excess of 80%. Less than 2% of the portfolio had LTV ratios at origination above 90%.'" *Id.* ¶ 560.

- "Schneider pointed out that . . . the Company had 'a 17 percentage point reduction in loans with [loan-to-value ratios] higher than 80.'" *Id.* ¶ 699.

Plaintiffs label these statements "false" on their theory that "starting in 2005 and continuing throughout the Class Period, the Officer Defendants caused the Company's credit risk management to deteriorate." *Id.* ¶ 565. As a result of this "deterioration," Plaintiffs opine, "WaMu's loan underwriting standards were dangerously relaxed" and there was a "culture created by WaMu's senior management" that encouraged the Company "to sell and approve riskier loans without adequately considering the quality of such loans." *Id.*

But these amorphous allegations fall far short of alleging falsity. The Complaint does not make any particularized allegation that "total assets as of December 31, 2005" were something other than $343.6 billion, *id.* ¶ 579, or that the Company had something other than "a 17 percentage point reduction in loans with [loan-to-value ratios] higher than 80," *id.* ¶ 699. Nor do Plaintiffs deny that Deloitte & Touche "issued ***unqualified*** opinions on the Company's financial statements and management's assessment of internal controls throughout the Class Period." *Id.*

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 23
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

¶ 838 (emphasis supplied).  WaMu's financial results have never been restated, Deloitte's unqualified opinions still stand, and it therefore would have been misleading to report results other than what the audited financial statements disclosed.

Faced with this, Plaintiffs resort to the bare assertion that every financial result ever uttered during the putative class period was "false."  But that allegation falls short as a matter of law.  The PSLRA requires securities fraud plaintiffs to particularly "specify . . . the reason or reasons *why* [these] statement[s] [are] misleading."  15 U.S.C. § 78u-4(b)(1) (emphasis supplied).  In *Ronconi*, for example, securities fraud plaintiffs claimed that a corporation lied when it reported that "sales growth was accelerating."  253 F.3d at 430.  That statement, the Ninth Circuit noted, is "descriptive of historical fact" because it "means that a graph of sales against time shows a concave line."  *Id.* at 431.  Yet plaintiffs failed to specify *why* the statement was false:  merely averring in the complaint "that sales growth was not accelerating" did not satisfy plaintiffs' pleading obligations as a matter of law, the Ninth Circuit held, because plaintiffs "fail[ed] to describe, chart or graph what sales actually did."  *Id.* at 430–31 (affirming dismissal with prejudice of securities fraud claims).

The Ninth Circuit's recent opinion in *Metzler* likewise illustrates the insufficiency of conclusory allegations that "everything" was false because of a "secret fraud."  The complaint in *Metzler* asserted that "'[a]ll of [the company's] stated financial results during the entire Class Period were false and misleading as a result of the Company-wide scheme to inflate enrollment figures in order to misappropriate federal financial aid funding.'"  540 F.3d at 1070 (quoting complaint).  Finding these broad-brush allegations "decidedly vague" and "lack[ing] the specificity that the PSLRA requires," the Ninth Circuit affirmed the dismissal of the case with prejudice on the pleadings.  *Id.*; *accord California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) (affirming dismissal with prejudice of plaintiffs' conclusory assertion that a company's "first and second quarter 1999 results were falsified");  *Naye v. Boyd*, 1986 WL 198, at *4 (W.D. Wash. 1986) (Rothstein, J.) (dismissing securities

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 24
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

claims because, "putting aside the artful pleading, . . . [t]here is no dispute that the published

financial statements accurately reflected the amount of loan loss reserves and earnings").

Here, too, Plaintiffs cannot meet their obligations under the PSLRA by broadly denying,

for example, that following second quarter 2006 results, "the Board [raised] the quarterly

dividend by $0.01 per share, to $0.52." Compl. ¶ 606. Plaintiffs must set out—with

particularity—why they say that statement was false. Their Complaint repeatedly falls short.

The Complaint thus suffers from the same defect as the subprime-related complaint in *New York

State Teachers' Retirement Systems v. Fremont General Corp.*, 2008 WL 4812021 (C.D. Cal.

2008), filed by the same lawyers responsible for the Complaint here. In dismissing a challenge

to subprime lender Fremont's reported financial results, Judge Florence-Marie Cooper relied on

settled Ninth Circuit authority to the effect that "failure to provide an objective measure against

which allegedly 'false' statements can be compared or quantified renders generalized allegations

insufficient under the heightened PSLRA pleading standard." *Id*. at *6 (discussing *In re Vantive

Corp. Sec. Litig.*, 283 F.3d 1079, 1086 (9th Cir. 2002)).

In the footnote, the WaMu Officers identify the paragraphs that allege only statements of

undisputed historical fact or whose truth the Complaint does not question.[2] For the Court's

convenience, Appendix B sets forth verbatim the allegations in question.

## C.    General Statements of Optimism and Predictions Concerning Future Performance Cannot Constitute Materially False or Misleading Statements

The final category of statements identified in the Complaint as "materially false and

misleading" consists of insufficiently specific statements of optimism, which cannot support a

federal securities claim as a matter of law. "People in charge of an enterprise are not required to

take a gloomy, fearful or defeatist view of the future." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d

1124, 1129 (2d Cir. 1994). Nor does the law subject them to liability for lack of clairvoyance—

---

[2] Cathcart: Compl. ¶¶ 612; 614; 698; Rotella: Compl. ¶¶ 577; 587; 595; 599; 607; 614; 656; 657; 661; 690; Schneider: Compl. ¶¶ 567; 568; 612; 613; 615; 698; 699; Casey: Compl. ¶¶ 559; 560; 561; 562; 563; 564; 576; 578; 579; 580; 581; 582; 583; 584; 593; 594; 596; 597; 598; 607; 608; 609; 621; 624; 625; 638; 639; 640; 641; 643; 644; 656; 657; 658; 659; 660; 661; 666; 668; 669; 671; 672; 673; 687; 690; 720.

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 25
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

especially with respect to a financial whirlwind that has put the national economy (not just WaMu and its investors) at risk. "The statement, 'the storm is passing and it will be sunny tomorrow,' when it in fact continues to snow the next day, may be bad forecasting, but it is not necessarily a lie." *Ronconi*, 253 F.3d at 433.

### 1. Confidence in WaMu's Prospects Is Not Securities Fraud

The Complaint relies on a variety of subjective statements of optimism and confidence. Sometimes referred to as "puffery," "soft statements," or "loose prediction," expressions of a business leader's general confidence in the enterprise he or she is running long have been held to be outside the ambit of the federal securities laws because "they are considered immaterial and discounted by the market and reasonable investors do not consider 'soft' statements or loose predictions important in making investment decisions." *In re LeapFrog Enterprises, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1049 (N.D. Cal. 2007) (quotations omitted). Examples include:

- Expectations of "continued strong growth," *In re Splash Tech. Holdings Secs. Litig.*, 160 F. Supp. 2d 1059, 1076–77 (N.D. Cal. 2001);

- "Fundamentally, we're just a good company, we know our markets very well, we dominate these markets, we have good people, a good management team, and we're positioned to move forward now," *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998); and

- "We are also strengthening our operations group, supply-chain management system and warehousing and logistics functions," *LeapFrog Enterprises*, 527 F. Supp. 2d at 1050.

Plaintiffs challenge a variety of similar statements, including for example:

- "On the credit side, you can see we had a pretty good year. We feel like we are in good shape," Compl. ¶ 577 (Mr. Rotella);

- "Our credit performance continues [to be] very good. . . We continue to proactively manage our credit risk, and are taking steps now to reduce potential future exposure," *id.* ¶ 559 (Mr. Casey);

- "Turning to credit, we are pleased with the ongoing strong credit performance of our portfolio. The economy remains strong, and the quality of our portfolio continues to be fairly stable, with only a slight increase in non-performing assets," *id.* ¶ 593 (Mr. Casey);

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 26
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

- "[O]ur risk management strategy continues to [be] effective and our credit quality remains strong," *id.* ¶ 594 (Mr. Casey);

- "[W]e're being quite careful and making any changes we need to make in our credit policies as we move forward, but our sense of things are – things are in pretty good shape," *id.* ¶ 607 (Mr. Rotella); and

- "We've been making strategic choices to prepare for the environment we currently find ourselves in," *id.* ¶ 614 (Mr. Cathcart).

Statements of this nature cannot form the basis of a federal securities claim. In the footnote, the WaMu Officers identify the paragraphs of the Complaint that fall short on this basis.[3] For the Court's convenience, Appendix B sets forth verbatim the allegations in question.

## 2. The PSLRA's Safe Harbor Provision Shields "Forward-Looking Statements" from Liability

Congress has created a special safe harbor for "forward-looking statements"—*i.e.*, estimates, predictions, plans or objectives that are not statements of historical fact—if appropriate cautionary language is provided along with the statement. 15 U.S.C. § 78u-5(c). "Forward-looking statements include financial projections, future management plans and objectives, statements of future economic performance, as well as any statement of the assumptions underlying any of the foregoing," including "a present tense statement [for which] the truth or falsity of the statement cannot be discerned until some point in time after the statement is made." *LeapFrog Enterprises*, 527 F. Supp. 2d at 1045–46 (citations and quotations omitted). Where appropriate cautionary language either precedes or accompanies every statement challenged in the complaint (as it did here, *see* Appendix A), the PSLRA forecloses liability for forward-looking statements absent well-pled allegations of "***actual knowledge*** that the statement was false or misleading." *Ronconi*, 253 F.3d at 429 (emphasis supplied; internal quotation and alteration omitted).

---

[3] Cathcart: Compl. ¶¶ 612; 614; 698; Schneider: Compl. ¶¶ 567; 568; 612; 613; 615; 699; Rotella: Compl. ¶¶ 577; 595; 599; 607; 614; 656; 657;661; 690; Casey: Compl. ¶¶ 559; 564; 576; 580; 582; 593; 594; 607; 621; 640; 641; 656; 657; 661; 666; 668; 669; 671; 687; 690; 720.

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 27
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

As noted above, Plaintiffs have pointed to only a few allegedly false and misleading statements by the four WaMu Officers named in their Exchange Act claims. Of those, some plainly fall within the statutory safe harbor. For example, Plaintiffs allege that Mr. Casey in July 2007 gave his prognosis for losses and nonperforming assets: "While we **anticipate** that we **will** see higher [nonperforming assets] across all of our home loan portfolios, we **expect** losses in the prime loans to be much lower due to the lower LTVs and high FICO profile of our prime portfolio," *id.* ¶ 666 (emphasis supplied). Mr. Casey's comments on their face relate to expectations for the future. Because Plaintiffs have not made any effort to allege specific facts showing that Mr. Casey had "actual knowledge that the statement was false or misleading," *Ronconi*, 253 F.3d at 429, Plaintiffs cannot base a claim on Mr. Casey's forward-looking statement. In the footnote, the WaMu Officers identify the paragraphs of the Complaint that allege nothing more than forward-looking statements, including statements phrased in the present tense, but whose truth or falsity could be discerned only in light of future events.[4] For the Court's convenience, Appendix B sets forth verbatim the allegations in question.

## VII. LOSS CAUSATION

A plaintiff must plead and prove "loss causation" to recover on an Exchange Act claim. *See* 15 U.S.C. § 78u-4(b)(4); *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). Plaintiffs cannot satisfy their obligation to plead loss causation by asserting only that WaMu's stock price was "artificially inflated" as a result of alleged misstatements or omissions, which caused Plaintiffs to pay more than they otherwise might have paid. *Id.* at 347. Rather, Plaintiffs must set out well-pled facts that, if true, would show that the revelation of a previously secret fraud (that is, a "corrective disclosure") caused a decline in WaMu's share price. As the Ninth Circuit has explained, pleading loss causation requires factual allegations showing "that the practices that the plaintiff contends are fraudulent were [1] **revealed** to the market and

---

[4] Cathcart: Compl. ¶¶ 612; Schneider: Compl. ¶¶ 568; Rotella: Compl. ¶¶ 577; 595; 599; 607; 656; 657; 661; Casey: Compl. ¶¶ 559; 576; 580; 581; 593; 594; 607; 621; 640; 641; 642; 656; 657; 661; 666; 668; 669; 671; 687; 690.

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

[2] **caused** the resulting losses." *Metzler Investors GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) (emphasis supplied). In *Metzler*, for example, shortly before an earnings announcement, the Financial Times published a story about a Department of Education investigation of the defendant Corinthian Colleges. In affirming dismissal, the Ninth Circuit held as a matter of law that the "more plausible reason" for the ensuing drop in Corinthian's stock price was its announced earning estimates, not the disclosure of alleged systematic manipulation of student enrollment. *Id.* *Compare In re Gilead Sciences Sec. Lit.*, 536 F.3d 1049, 1058 (9th Cir. 2008) (drop in stock price plausibly caused by misstatements).

Consistent with *Corinthian*, Plaintiffs must "link their losses to the alleged misrepresentations by showing that [a company's] stock price dropped upon revelation of the true state of the facts"—a so-called "corrective disclosure." *Weiss v. Amkor Technology, Inc.*, 527 F. Supp. 2d 938, 946–47 (D. Ariz. 2007). In this case, however, the Complaint does not identify **any** corrective disclosure that "revealed" to the market a previously secret "fraud" perpetrated by the WaMu Officers. (Even the declaration that Plaintiffs appended to their Complaint admits, with understatement, that the "alleged corrective disclosures are not perfect mirror images of the alleged misstatements." Coffman Decl. at 4.) Instead, in 76 paragraphs of allegations, Plaintiffs detail the steady decline in WaMu's stock price over a period of 10 months without linking the decline to any statement revealing to the market that the WaMu Officers committed fraud. *See* Compl. ¶¶ 687–763. The Complaint refers repeatedly to analyst reports that recognized the broader economic forces at work, such as "the rapid deterioration in the housing environment," *id.* ¶ 712 (quoting Morgan Stanley), the housing decline's impacts on "publicly traded lenders" generally, *id.* ¶ 717 (citing Gradient Analytics), and the "period of elevated credit cost & business uncertainty," *id.* ¶ 722 (quoting Citigroup Global Markets).

Plaintiffs' few efforts to link statements by WaMu or the WaMu Officers to the stock price declines fail as a matter of law:

**First**, Plaintiffs rely primarily on a series of announcements that WaMu had increased loan loss reserves to reflect the prospect of future non-payment in a time of economic turmoil.

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 29
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

Thus, Plaintiffs have alleged that "the truth" began to emerge on October 17, 2007, Compl. ¶ 3, a date notable because WaMu that day announced its first substantial increase in its loan loss reserves after the crisis began to unfold. See *id*. ¶ 687. Plaintiffs' ensuing "loss causation" allegations likewise rely largely on WaMu's adjustments to reserves in November 2007 (*id*. ¶ 696), December 2007 (*id*. ¶ 706), April 2008 (*id*. ¶ 733), and July 2008 (*id*. ¶ 747), a period of time when (as the Court will recall) Lehman Brothers failed, Bear Stearns went out of business, and Merrill Lynch sold itself to Bank of America at a price that would have been unthinkable only weeks before. Throughout this economic upheaval, however, WaMu never revised prior results or suggested that its prior reserve amounts had been inaccurate or incomplete when made, *i.e.*, it never said anything to suggest an error in prior financial reporting.

As a matter of law, the Complaint's allegations concerning increasing reserves do not satisfy the obligation to plead loss causation, as they do not amount to a corrective disclosure. Many courts have held that "the mere fact that [a company's] reserves eventually proved to be inadequate does not mean a false statement was made." *In re 2007 Novastar Financial, Inc., Sec. Litig.*, 2008 WL 2354367, at *3 (W.D. Mo. 2008); *Linder Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 58–59 (D. Mass. 1995) ("[T]he mere allegation of later substantial increases in loan loss reserves does not provide adequate factual support for a claim that earlier statements of adequate reserves must be attributable to fraud . . . ."); *Dubowski v. Dominion Bankshares Corp.*, 763 F. Supp. 169, 172 (W.D. Va. 1991) ("In hindsight, the reserves were not adequate, but this is not necessarily fraud. Indeed, this does not even imply fraud."). Because the announcement of increased loan reserves "d[id] not reveal to the market the falsity of the prior [statements]," it cannot serve as a corrective disclosure as a matter of law. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005). *See also Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 617 (S.D.N.Y. 2008) (no loss causation where unfavorable news did not "specifically attribute" bad news to the alleged fraud); *In re Impax Laboratories, Inc. Sec. Litig.*, 2007 WL 5076983, at *4 (N.D. Cal. 2007) (no loss causation where alleged corrective disclosure "did not indicate that the [previously issued] financial statements or

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

revenues would be altered"); *Weiss*, 527 F. Supp. 2d at 945–47 (loss causation not alleged where press release "[did] not signal, much less state, that any prior option grants were incorrect, that Amkor's internal controls were weak, that there was evidence supporting a finding that one former executive had intentionally manipulated stock option pricing[,] or that prior financial statements were incorrect in any way").

*Second*, Plaintiffs attribute some of the declines in WaMu's stock price to the New York Attorney General's decision to file suit against a WaMu vendor, First American/eAppraiseIT, which handled the appraisals on some (but not all) WaMu loans for a period of time beginning in 2006. *See* Compl. ¶¶ 691–95, 697, 701. But the Attorney General's publicity-grabbing (and still unsubstantiated) allegations cannot be the basis for a loss causation argument with respect to the WaMu Officers. WaMu was never a party to the New York Attorney General's lawsuit, and it (as well as First American/eAppraiseIT) has denied any charges of wrongdoing. *Id.* ¶ 716 (reporting results of WaMu's investigation of charges). *See Davidoff v. Farina*, 2005 WL 2030501, at *16 (S.D.N.Y. 2005) (no corrective disclosure where "the relevant statement . . . was a denial of [wrongdoing]"; "Plaintiffs' speculation that the public disbelieved that denial and therefore discounted the price is too strained an inference even on a motion to dismiss.").

*Third*, leaving aside the Complaint's other shortcomings, Plaintiffs do not link any statement by the WaMu Officers to the decline in WaMu's stock price. For Messrs. Cathcart and Schneider, the Complaint alleges only a few statements. *See* Compl. ¶¶ 567, 568 (Mr. Schneider's comments at 2005 New York Investor Day); *id.* ¶¶ 612, 614 (Mr. Cathcart's comments at 2006 Investor Day); *id.* ¶ 613 (Mr. Schneider's comments at 2006 Investor Day). But Plaintiffs do not make any effort to suggest that (a) the falsity of these statements was revealed to the market or (b) the market dropped as a result. Similarly, while the Complaint alleges more public statements by Mr. Rotella—all of them non-actionable, for reasons stated above—it does not link corrective disclosures concerning Mr. Rotella's statements to any drop in stock price. *See* Compl. ¶¶ 576–77, 587 (comments in January 2006); *id.* ¶¶ 595, 599 (comments in May 2006); *id.* ¶ 607 (comments in July 2006); *id.* ¶¶ 614–15 (comments in

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 31
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

September 2006); *id*. ¶ 656 (comments in May 2007).  Indeed, only one of Mr. Rotella's

statements occurred within a year of the alleged revelations to the market; Plaintiffs make no

effort to link it (or any statements by Mr. Rotella less proximate in time) to a market decline.

Plaintiffs devote more of their Complaint to Mr. Casey, principally because he certified

the Company's financial statements and participated in earnings calls in his capacity as Chief

Financial Officer.  *See, e.g.*, Compl. ¶¶ 561–62, 578–79.  (Mr. Casey's certifications in this

regard cannot give rise to any inference of scienter, as the Ninth Circuit has made clear within

the last two weeks.  *Glazer Capital Management v. Magistri*, 2008 WL 5003306, at *9 (9th Cir.

Nov. 26, 2008).  Taken as a whole, however, the statements attributed to Mr. Casey amount to

little more than routine reporting of corporate results based on financial statements on which

Deloitte & Touche rendered clean opinions and which have never been restated or corrected.

*See, e.g.*, Compl. ¶ 621 (Company reviews loan loss allowance "every single quarter"); *id*. ¶ 656

(Company "increased our pricing and decreased our risk profile that we're willing to

underwrite"); *id*. ¶ 657 (Company "disciplined" and "monitoring trends in the housing market");

*id*. ¶ 666 (expect losses in prime loans to be much lower than the home loan portfolio as a

whole); *id*. ¶¶ 668–69 (using models to "anticipate and project" allowance escalation); *id*. ¶ 671

(felt "very good" about option ARM portfolio).  Plaintiffs never have alleged a corrective

disclosure that called into question any of Mr. Casey's public statements, much less suggested

that such a revelation caused a price decline.

\*       \*       \*

At bottom, the Complaint's theory of loss causation does not rest on the proposition that

the market for WaMu stock declined because one of these WaMu Officers said something that

later turned out to be false.  Instead, the Complaint depends on the notion that "the foreseeable

consequence of lending money to less creditworthy individuals than disclosed to the market is, ***at***

***some point***, incurring larger than expected credit losses and the need to record greater loss

reserves."  Coffman Decl. at 4–5 (emphasis supplied).  By simply defaulting to the broad notion

that "the truth" (*i.e.*, that more of WaMu's borrowers than expected might default in the midst of

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 32
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

a meltdown in the housing market) would come to light "at some point," Plaintiffs rely on a loss causation theory that does not differ in any meaningful way from the amorphous allegation rejected as insufficient in *Dura*. In that case, the Supreme Court reversed the Ninth Circuit's holding that loss causation meant only that "the price [of the security] on the date of purchase was inflated because of the misrepresentation." 544 U.S. at 342 (quoting lower court decision).

> In our view, this statement of the law is wrong. Normally, in cases such as this one (*i.e.*, fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic loss. . . .
>
> When the purchaser subsequently resells [shares that were purchased at an inflated price], even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.
>
> Given the tangle of factors affecting price, the most logic alone permits us to say is that the higher purchase price will sometimes play a role in bringing about a future loss.

*Id*. at 342–43.

A plaintiff attempting to plead loss causation cannot simply assert that the "truth" will "someday" emerge. *See Metzler*, 540 F.3d at 1062; *Weiss*, 527 F. Supp. 2d at 945. Instead, Plaintiffs must allege that the truth ***did*** emerge, revealing an actionable misstatement or omission on the part of the defendant, and that the market fell because of that revelation. Here, Plaintiffs have not tied market losses to a corrective disclosure as to any false statement alleged in the Complaint, much less a false statement attributable to one of the WaMu Officers.

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 33
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

# VIII.  CONCLUSION

For the reasons set out above, the WaMu Officers respectfully request that the Court dismiss all claims in Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

Dated this 8th day of December, 2008.

SIMPSON THACHER & BARTLETT LLP          DAVIS WRIGHT TREMAINE LLP

Barry R. Ostrager (*pro hac vice*)
Mary Kay Vyskocil (*pro hac vice*)
425 Lexington Avenue                                      By:   */s/ Stephen M. Rummage*
New York, New York 10017                                    Stephen M. Rummage, WSBA #11168
Tel.:      (212) 455-2500                                         Steven P. Caplow, WSBA #19843
Fax:      (212) 455-2502                                         1201 Third Avenue, Suite 2200
Email:    bostrager@stblaw.com                           Seattle, Washington 98101-3045
             mvyskocil@stblaw.com                          Tel.:      (206) 757-8108
                                                                         Fax:      (206) 757-7136
           -and-                                                        E-mail:   steverummage@dwt.com
                                                                                      stevencaplow@dwt.com
Robert J. Pfister (*pro hac vice*)
Gabriel D. Miller (*pro hac vice*)
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Tel.:      (310) 407-7500                                 *Melissa Ballenger, Thomas W. Casey,*
Fax:      (310) 407-7502                                 *Ronald J. Cathcart, Stephen J. Rotella,*
Email:    rpfister@stblaw.com                           *David C. Schneider, and John F. Woods*
             gdmiller@stblaw.com

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 34
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

# CERTIFICATE OF SERVICE

I hereby certify that on December 8th, 2008, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who receive CM/ECF notification, and that the remaining parties shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 8th day of December, 2008.

Davis Wright Tremaine LLP
*Attorneys for Defendants*
*Melissa Ballenger, Thomas W. Casey,*
*Ronald J. Cathcart, Stephen J. Rotella,*
*David C. Schneider, and John F. Woods*

By */s/ Steven P. Caplow*
Steven P. Caplow, WSBA #11168
Suite 2200
1201 Third Avenue
Seattle, Washington 98101-3045
Telephone: (206) 757-8436
Fax:          (206) 757-7700
E-mail: stevencaplow@dwt.com

WAMU OFFICERS' MOTION
TO DISMISS THE SECURITIES
COMPLAINT [OD-2] —Page 35
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
*-and-*
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700