The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                       AT SEATTLE

10

11

12  IN RE WASHINGTON MUTUAL, INC.
    SECURITIES, DERIVATIVE & ERISA          )   No. 2:08-md-1919 MJP
    LITIGATION                              )

13

14

    )   Lead Case No. C08-0387 MJP

15

16  IN RE WASHINGTON MUTUAL, INC.           )   **WAMU OFFICERS' MOTION TO**
    SECURITIES LITIGATION                   )   **DISMISS PLAINTIFFS' AMENDED**
                                            )   **CONSOLIDATED SECURITIES**
17  This Document Relates to:               )   **COMPLAINT**
    ALL ACTIONS                             )
                                            )   [OD–6]
18                                          )
                                            )
19                                          )   ***Note for Motion:  August 25, 2009***
                                            )
20                                          )   **ORAL ARGUMENT REQUESTED**
                                            )

21

22

23

24

25

26

27

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT [OD–6]
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

# Table of Contents

**Page**

I. INTRODUCTION ...................................................................................... 1

II. PLAINTIFFS FAIL TO PLEAD SCIENTER ............................................ 4

    A. "Motive and Opportunity" ................................................................. 5

    B. Repackaged Claims of Falsity ......................................................... 7

    C. Anonymous Witnesses ..................................................................... 8

III. PLAINTIFFS FAIL TO PLEAD ANY MISSTATEMENTS ..................... 11

    A. Statements Removed from Context ................................................. 13

        1. Thomas Casey ......................................................................... 14

        2. Stephen Rotella ...................................................................... 15

        3. Ronald Cathcart ..................................................................... 16

        4. David Schneider ...................................................................... 17

    B. Allegations of Appraisal Irregularities ........................................... 17

    C. Plaintiffs' Faulty Accounting .......................................................... 19

IV. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ............................ 22

V. PLAINTIFFS' CONTROL PERSON CLAIMS FAIL .............................. 23

VI. CONCLUSION ..................................................................................... 24

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

# Table of Authorities

**Page(s)**

## Cases

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
505 F. Supp. 2d 662 (D. Colo. 2007) .................................................................. 5

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ......................................................................................... 3

*Berson v. Applied Signal Technologies, Inc.*,
527 F.3d 982 (9th Cir. 2008) ............................................................................... 7

*California Public Employees Retirement System v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ............................................................................... 18

*Commissioner of Internal Revenue v. Lundy*,
516 U.S. 235 (1996) ........................................................................................... 22

*Decker v. Massey-Ferguson, Ltd.*,
681 F.2d 111 (2d Cir. 1982) ............................................................................ 3, 8

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ....................................................................................... 3, 22

*Glazer Capital Management, LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ............................................................................... 5

*Higginbotham v. Baxter International, Inc.*,
495 F.3d 753 (7th Cir. 2007) ............................................................................... 8

*In re Autodesk Securities Litigation*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) ................................................................. 5

*In re Calpine Securities Litigation*,
288 F. Supp. 2d 1054 (N.D. Cal. 2003) ............................................................... 5

*In re Charles Schwab Securities Litigation*,
2009 WL 262456 (N.D. Cal. 2009) .................................................................... 18

*In re Cornerstone Propane Partners Securities Litigation*,
416 F. Supp. 2d 779 (N.D. Cal. 2005) ............................................................... 24

*In re Countrywide Derivative Litigation*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ........................................................ 20, 21

*In re Impac Mortgage Holdings Securities Litigation*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008) ............................................................. 22

*In re Silicon Graphics Securities Litigation*,
183 F.3d 970 (9th Cir. 1999) ............................................................... 1, 6, 10, 18

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page ii
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

*In re Stac Electronics Securities Litigation*,
    89 F.3d 1399 (9th Cir. 1996) .................................................................... 1

*In re Vantive Corp. Securities Litigation*,
    283 F.3d 1079 (9th Cir. 2002) .................................................................. 18

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ...................................................................... 22

*Limantour v. Cray Inc.*,
    432 F. Supp. 2d 1129 (W.D. Wash. 2006) ................................................ 10

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ........................................................... *passim*

*Nijhawan v. Holder*,
    129 S. Ct. 2294 (2009) .............................................................................. 22

*Paracor Finance, Inc. v. General Electric Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) .............................................................. 23, 24

*Phillips v. Scientific-Atlanta, Inc.*,
    374 F.3d 1015 (11th Cir. 2004) ................................................................ 22

*Pittleman v. Impac Mortgage Holdings, Inc.*,
    2009 WL 648983 (C.D. Cal. 2009) ............................................................ 4

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ........................................................... 5, 7, 18

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ........................................................................ 4

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) .................................................................. 4, 7

*Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) .................................................................... 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) ........................................................................... 4, 11

*Tuchman v. DSC Communications Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ...................................................................... 5

*Weiszmann v. Kirkland & Ellis*,
    732 F. Supp. 1540 (D. Colo. 1990) .......................................................... 23

*Yucyco, Ltd. v. Republic of Slovenia*,
    984 F. Supp. 209 (S.D.N.Y. 1997) ........................................................... 23

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................ *passim*

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page iii
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

**Statutes**

15 U.S.C. § 78t.................................................................................... 23, 24

15 U.S.C. § 78u-4 ................................................................................ 8, 22

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................ 11

Fed. R. Civ. P. 8(a) ................................................................................. 23

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure § 1248 (3d ed. 2009)................................. 23

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page iv
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

## I.  INTRODUCTION

Plaintiffs claim to have uncovered a "secret fraud" involving Washington Mutual's risk

management, appraisal, underwriting and accounting functions.  They purport to implicate in this

"fraud" four professionals who invested years of hard work and expertise in WaMu:  Thomas

Casey, Stephen Rotella, Ronald Cathcart, and David Schneider.  But the rigorous pleading

standards applicable to securities fraud claims "protect [these] professionals from the harm that

comes from being subject to fraud charges" by requiring a detailed factual showing before

saddling "the court, the parties and society [with the] enormous social and economic costs" of

fraud allegations.  *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 (9th Cir.

1996).  Here, Plaintiffs lack the requisite factual basis for three elements of their claims:

scienter, misstatements and loss causation.

*No Scienter*:  The intent to deceive or defraud investors (*i.e.*, "scienter") lies at the heart

of securities fraud claims.  Without it, there is no fraud.  The law does not allow plaintiffs to

"aver intent in general terms of mere 'motive and opportunity' or 'recklessness;'" instead it

demands that plaintiffs set out "in great detail . . . strong circumstantial evidence of deliberately

reckless or conscious misconduct."  *In re Silicon Graphics Securities Litigation*, 183 F.3d 970,

974, 979 (9th Cir. 1999).  The Amended Complaint does not—because it cannot—meet that

strict standard.  It does not allege that any of the WaMu Officers sold stock or profited in any

way from WaMu's collapse.  No one claims to have heard any of the WaMu Officers privately

state a fact or express an opinion at odds with what they said publicly.  Instead, Plaintiffs offer

only boilerplate assertions about incentive-based compensation and access to routine corporate

information—none of which suffices under well-settled Ninth Circuit precedent.

The already-thin scienter allegations of Plaintiffs' original complaint have become even

thinner in the Amended Complaint.  Plaintiffs have dropped all mention of what used to be their

lead scienter allegation (*i.e.*, WaMu's pre-class-period request for a narrow regulatory exemption

from its primary regulator).  Even the much-vaunted collection of 89 "confidential witnesses"

has shrunk:  nearly a third disappeared from the Amended Complaint without explanation.  Of

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 1
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

those that remain, most have nothing substantive to say about the WaMu Officers, others have materially changed their stories in a way that dispels any inference of fraud, and the remaining three have made ambiguous statements that do not give rise to any inference of scienter.

*No Misstatements*:  The Amended Complaint contains no well-pled allegations that any of the WaMu Officers said anything untrue:

- Risk Management & Underwriting:  Using statements taken out of context and vague allegations from anonymous sources, Plaintiffs imply that the WaMu Officers recklessly drove up mortgage volume while expressing unqualified optimism.  In fact, when the documents referenced and statements challenged in the Amended Complaint are read ***in context***, Plaintiffs' story falls apart.  Loan volume *decreased* substantially over the putative class period thereby reducing risk.  The Amended Complaint obscures the true facts by, for example, faulting Mr. Cathcart for reporting "stronger credit quality" (¶ 568)—when in fact the quoted phrase *compared* the relative credit quality of two different portfolios, one stronger than the other.

- Appraisals:  The Amended Complaint has recycled allegations of "corrupt" appraisal practices from claims made by a different party in a different lawsuit pending in a different court.  That other suit never mentions Messrs. Casey, Rotella, Cathcart or Schneider, and certainly does not accuse them of fraudulent behavior.  Plaintiffs' attempt to adopt the New York Attorney General's allegations does not make their claim any more plausible because the Amended Complaint never links those allegations to any conduct or motive of the WaMu Officers.

- Accounting:  Plaintiffs' allegation of accounting "manipulation" just repackages their allegations about risk management, appraisals and underwriting.  That is, Plaintiffs assert that the Company's Allowance for Loan and Lease Losses ("Allowance") was inflated *because of* what Plaintiffs say was lax risk management, faulty appraisals and loose underwriting—not because of any accounting policy or practice.  But WaMu accounted for incurred loan losses in strict accordance with GAAP, and Plaintiffs never claim that

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 2
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

WaMu's auditors or regulators ever intimated otherwise. Plaintiffs' alternative accounting confection is improper under GAAP and would have subjected the Company to claims of securities fraud.

***No Loss Causation***: Finally, the Amended Complaint fails to connect anything any particular WaMu Officer said to any concrete loss on Plaintiffs' part. As with scienter and falsity, Plaintiffs must plead loss causation as to ***each defendant***; it is not sufficient for Plaintiffs to allege that they lost money as a result of the collective acts of all defendants, or that they bought stock at an artificially inflated price. *Id.*; *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). The Amended Complaint, however, does not attempt to link Plaintiffs' losses to any particular statement of or action by any of the WaMu Officers. Instead, it merely "tenders naked assertions" that the required element of loss causation exists, "devoid of further factual enhancement" connecting causation on the required defendant-by-defendant basis. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

*     *     *

The deficiencies in Plaintiffs' Amended Complaint go to the heart of the remedy Congress provided for true cases of securities fraud—cases where a particular person actually made a particular false statement to investors for the purpose of defrauding them. Such cases bear no resemblance to the sprawling, disjointed assertions about the WaMu Officers set out in the Amended Complaint. "It is a serious matter to charge a person with fraud," *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir. 1982), which is why "plaintiffs in private securities fraud class actions face formidable pleading requirements to properly state a claim and avoid dismissal" on the pleadings, *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1054–55 (9th Cir. 2008). Because Plaintiffs have not met those "formidable" requirements, the Court should dismiss their claims against the WaMu Officers. And because it is "clear that the plaintiffs ha[ve] made their best case [yet are still] found wanting," the dismissal now should be with prejudice. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 3
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

## II. PLAINTIFFS FAIL TO PLEAD SCIENTER

Ninth Circuit precedent instructs district courts to review scienter allegations "with a practical and common-sense perspective" that takes into account the realities of the industry and business climate in question. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). Context is key because a court considering a securities fraud motion to dismiss must weigh the inferences urged by the plaintiff (fraud and deceit) against all "plausible nonculpable explanations for the defendant's conduct" to determine which are more likely. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007). So in *Metzler*, for example, Judge Betty Fletcher scrutinized the context of an executive's remarks (a company-wide meeting with admissions officers at a for-profit educational institution) and concluded that an alleged "winking suggestion that admissions officers should perpetrate fraud" was equally likely to have been a "simpl[e] exhortation to improve business." 540 F.3d at 1069.

Plaintiffs' all-too-casual allegations of fraudulent behavior on the part of the WaMu Officers must similarly be examined in context. "This case is about a company involved in a volatile industry at the onset of a long, destructive economic downturn." *Pittleman v. Impac Mortgage Holdings, Inc.*, 2009 WL 648983, at *4 (C.D. Cal. 2009). The fact that the WaMu Officers invested their skills and labor at such a company and were "confident about their stewardship and the prospects of the business that they manage[d]" does not mean these experienced professionals intended to defraud anyone. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129–30 (2d Cir. 1994). Plaintiffs' attempts to show otherwise consist of well-worn "motive and opportunity" allegations (all of which have repeatedly been rejected by the Ninth Circuit), repackaged versions of the alleged misstatements, and ambiguous hearsay from anonymous sources.[1]

---

[1] The Amended Complaint quietly drops many of the scienter allegations made in Plaintiffs' original complaint, including all references to WaMu's request for a regulatory exemption from the Office of Thrift Supervision (Plaintiffs' lead scienter allegation in the original complaint).

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 4
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

## A.    "Motive and Opportunity"

None of the WaMu Officers had any motive to commit securities fraud.  Not one is alleged to have sold any stock at an incriminating point in time or to have profited in any way from WaMu's collapse.  In fact, Mr. Schneider nearly tripled his WaMu share holdings from 32,967 shares before the putative class period to 93,060 shares on the eve of the Company's bankruptcy.  *See* Rummage Decl. Ex. 1 (Schneider Form 4, Aug. 17, 2005); Rummage Decl. Ex. 14 (Schneider Form 4, Aug. 26, 2008).  The absence of stock sales by the WaMu Officers "dulls [Plaintiffs'] allegations of fraudulent motive" and is "inconsistent with an intent to defraud shareholders."  *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 678 (D. Colo. 2007) (collecting cases); *accord Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) ("When insiders miss the boat," their conduct does "not support an inference that they are preying on ribbon clerks who do not know what the insiders know.").

Plaintiffs offer just one alleged motive:  the partial correlation between the WaMu Officers' compensation and the Company's performance.  ¶ 425 (Mr. Casey); ¶ 470 (Mr. Rotella); ¶ 499 (Mr. Cathcart); ¶ 532 (Mr. Schneider).  Recognizing that most public companies in the United States align at least a portion of top executives' compensation with company performance, courts reject the notion that "a securities fraud plaintiff can automatically establish a strong inference of scienter whenever an executive's compensation is tied to the performance or stock price of the company for which he or she works."  *In re Calpine Securities Litigation*, 288 F. Supp. 2d 1054, 1087 (N.D. Cal. 2003); *e.g.*, *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994), for the proposition that "incentive compensation can hardly be the basis on which an allegation of fraud is predicated"); *In re Autodesk Securities Litigation*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) (no scienter where plaintiffs alleged that "the individual defendants were motivated to engage in fraud by the prospect of receiving large bonuses").

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 5
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

With no plausible explanation for ***why*** the WaMu Officers would try to defraud anyone, the Amended Complaint nonetheless tries to establish that the WaMu Officers had the "opportunity" to do so if they had been so inclined.  Plaintiffs point to receipt of internal reports (¶¶ 367, 422, 441, 461, 467, 486, 497, 521, 529) and/or attendance at company meetings (¶¶ 371, 421, 477).  As the Ninth Circuit has consistently held, however, "every sophisticated corporation uses some kind of internal reporting system," so allowing a securities fraud plaintiff "to go forward with a case based on general allegations of 'negative internal reports' would expose all those companies to securities litigation whenever their stock prices dropped."  *In re Silicon Graphics Securities Litigation*, 183 F.3d 970, 988 (9th Cir. 1999); *accord Metzler*, 540 F.3d at 1068 ("corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud").  The same is true of Plaintiffs' allegations that the WaMu Officers had "extensive industry experience" (¶¶ 374, 443, 487, 511) and cared about staying focused on what they were hired to do (¶¶ 372, 387, 400, 449, 491, 498, 522).  These are laudable traits—not grounds for inferring scienter.

Plaintiffs' "motive and opportunity" allegations are also belied by the fact that, prior to joining Washington Mutual in 2002 (Mr. Casey) and 2005 (Messrs. Rotella, Cathcart and Schneider), the WaMu Officers each had successful careers elsewhere, including at companies such as Coopers & Lybrand (a predecessor to today's PricewaterhouseCoopers), General Electric and the Canadian Imperial Bank of Commerce, among others.  ¶¶ 374, 443, 487, 511.  It strains credulity to believe that, upon arriving at WaMu, these seasoned professionals jointly decided to engage in "deliberate and secret efforts to decrease the efficacy of WaMu's risk management policies," "corruption of WaMu's appraisal process," "abandonment of appropriate underwriting standards" and "misrepresentation of WaMu's financial results."  ¶ 1.  Yet that fanciful theory lies at the heart of the Amended Complaint's scienter allegations.  *E.g.*, ¶ 44 ("As senior officers of WaMu who worked closely together, the Officer Defendants undoubtedly met and discussed the information available to each Officer Defendant. . . .").

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 6
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

### B.  Repackaged Claims of Falsity

Beyond the insufficient "motive and opportunity" allegations, many of the assertions in the scienter portions of the Amended Complaint just repackage Plaintiffs' falsity allegations.  For example, as to each of the four challenged business areas (risk management, appraisals, underwriting and accounting), the Amended Complaint asserts that "the falsity of Casey's statements . . . show[s] his scienter in making those statements."  ¶ 366 (risk management); ¶ 382 (appraisals); ¶ 397 (underwriting); ¶ 418 (accounting).  The Amended Complaint makes identical attempts to equate falsity with scienter as to Mr. Rotella (¶¶ 436, 448, 457, 465), Mr. Cathcart (¶¶ 476, 490, 494) and Mr. Schneider (¶¶ 505, 517, 527).  But falsity (even if it exists; here it does not) is no proxy for scienter—which is why even a restatement of financial results (which never happened at WaMu) gives no basis for inferring that those results were deliberately falsified in the first place.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009).

Plaintiffs' leap from falsity to scienter is especially inappropriate in this case, where the alleged "falsity" largely consists of failing to predict the collapse of the residential real estate market and the ensuing tsunami in the capital markets.  "The statement, 'the storm is passing and it will be sunny tomorrow,' when it in fact continues to snow the next day, may be bad forecasting, but it . . . does not raise a strong inference of intentional or deliberately reckless falsity or deception."  *Ronconi*, 253 F.3d at 433.  This is not one of the rare circumstances when falsity is so "obvious from the operations of the company [that] the defendants' awareness of the information's falsity can be assumed."  *Zucco Partners*, 552 F.3d at 1001 (citing *Berson v. Applied Signal Technologies, Inc.*, 527 F.3d 982, 987–89 (9th Cir. 2008), where defendant's representations to investors about stop-work orders were so patently false that deliberate fraud was the only cogent explanation); *see also South Ferry*, 542 F.3d at 786 (scienter may be inferred where "the nature of the [misstated] fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the [falsity]").

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 7
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

## C. Anonymous Witnesses

Finally, Plaintiffs attempt to create the statutorily required "strong inference" of scienter, 15 U.S.C. § 78u-4(b)(2), by relying on anonymous informants. By definition, these sources are not "willing to put [themselves] on record as to what the alleged fraud consists of specifically." *Decker*, 681 F.2d at 115 (quotation omitted). "It is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist." *Higginbotham v. Baxter International, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007).

The Court should approach the Amended Complaint's "confidential witnesses'" allegations with particular skepticism. The statements attributed to these anonymous sources changed in important ways when Plaintiffs revised their complaint. In the original complaint, for example, Plaintiffs quoted "CW 18" as saying that he was fired for refusing to "'bend the rules'" or "'look the other way.'" Original Compl. ¶ 116 (purporting to quote this individual). The Amended Complaint, however, quotes "CW 18" as saying merely that he voiced "serious concerns" about inappropriate policies, Am. Compl. ¶ 438; the quotations previously attributed to "CW 18" are gone. Being asked to "bend the rules" and "look the other way" implies a request to overlook unlawful behavior; expressing "serious concerns" does not.

The story attributed to "CW 79," who says he helped the WaMu Officers prepare for an investor presentation in 2006, has been watered down as well. In the original complaint, Plaintiffs wrote: "CW 79 stated that in preparing for that presentation, the Officer Defendants were highly focused on deciding *what they would and would not reveal to investors*." Original Compl. ¶ 492 (emphasis added). The Amended Complaint *omits* any implication of intentional non-disclosure. *Compare id. with* Am. Compl. ¶ 84 (similar paragraph, but *omitting* sentence referring to what WaMu Officers "would not reveal"). Similarly, the original complaint has "CW 79" asserting that the WaMu Officers "discussed a substantial amount of detailed information regarding levels of delinquencies concerning many of WaMu's specific loan product

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 8
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

types, ***but the Officer Defendants elected not to disclose such information to the public***." Original Compl. ¶ 492 (emphasis added). The Amended Complaint omits the latter portion of that sentence, so that "CW 79" now says only that the WaMu Officers "discussed detailed information regarding levels of delinquencies concerning WaMu's specific loan product types." Am. Compl. ¶ 84. In other words, "CW 79" now say nothing about the WaMu Officers "elect[ing] not to disclose such information to the public," thus dispelling ***any*** inference of fraud.

In addition to these (and other) alterations, the Amended Complaint inexplicably dispenses with nearly a third of Plaintiffs' anonymous sources. The original complaint referred to 89 individuals; 24 have now disappeared.[2] Plaintiffs do not explain why the Amended Complaint no longer cites any statements from two dozen people who, a few months ago, supposedly had insight into Defendants' state of mind—just as they do not explain why other statements attributed to anonymous sources have been changed in material ways. (Appendix C to the Amended Complaint continues to list the original 89 anonymous sources; it does not indicate which sources have been omitted or which statements have been altered.) Further, of the 65 anonymous sources still cited in the Amended Complaint, only 11 are mentioned in the scienter allegations directed at the WaMu Officers.[3] Of these remaining 11, the Amended Complaint cites six for innocuous propositions such as job duties, *see* Am. Compl. ¶¶ 506, 520, receipt of particular reports, *id*. ¶¶ 507–08, or organizational structure, *id*. ¶ 519. Of the five others, two ("CW 18" and "CW 79") have changed their stories to eliminate the proffered inference of conscious wrongdoing, as explained above. That leaves just three anonymous sources, none of whom implicates any of the WaMu Officers in wrongdoing:

---

[2]   *See* Original Compl. ¶ 72 (CW 3); *id*. ¶¶ 93, 343 (CW 11); *id*. ¶ 102 (CW 16); *id*. ¶ 125 (CW 22); *id*. ¶ 196 (CW 30); *id*. ¶¶ 229–31 (CW 32); *id*. ¶¶ 232–36 (CW 33); *id*. ¶¶ 253–55 (CW 37); *id*. ¶¶ 256–60 (CW 38); *id*. ¶ 283(CW 41); *id*. ¶ 288 (CW 43); *id*. ¶ 289 (CW 44); *id*. ¶¶ 290–97 (CW 45); *id*. ¶ 333 (CW 50); *id*. ¶ 351 (CW 55); *id*. ¶ 352 (CW 56); *id*. ¶ 353 (CW 57); *id*. ¶¶ 400–01 (CW 70); *id*. ¶ 402 (CW 71); *id*. ¶ 403 (CW 72); *id*. ¶¶ 404–05 (CW 73); *id*. ¶¶ 406–07 (CW 74); *id*. ¶¶ 410–11 (CW 76); *id*. ¶ 416 (CW 77).

[3]   *See* Am. Compl. ¶¶ 367, 441–42, 479–80 (CW 17); *id*. ¶¶ 438, 460, 484, 496 (CW 18); *id*. ¶¶ 481–82, 507 (CW 19); *id*. ¶ 506 (CW 20); *id*. ¶¶ 509, 519 (CW 63); *id*. ¶ 459 (CW 65); *id*. ¶ 508 (CW 78); *id*. ¶¶ 373, 398, 466, 477, 485, 495, 510, 518, 528 (CW 79); *id*. ¶¶ 368–70, 420, 478 (CW 80); *id*. ¶ 519 (CW 81); *id*. ¶ 519 (CW 89).

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 9
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

- "CW 17" alleges that some of the WaMu Officers knew "the Company was exceeding certain risk parameters." ¶ 367. Yet this individual (who quit less than a year into the putative class period, ¶ 65) fails to identify the parameters, in what respect the parameters were allegedly exceeded, or what actions were taken, not taken, or should have been taken in response to the "parameters" listed in a weekly report. "CW 17" further concedes that the unspecified "parameters" allegedly being exceeded were *internal* guidelines—not anything imposed by an accounting standard or government regulation, or anything represented to investors. ¶ 367. Courts consistently reject far more detailed assertions by confidential witnesses. *Zucco Partners*, 552 F.3d at 998–99; *Silicon Graphics*, 183 F.3d at 985.

- "CW 19" complains that his boss, Mr. Cathcart, "had no understanding of overall compliance risk, 'did not want to learn it, and generally did not care for it.'" ¶ 481. It should go without saying that a subordinate's criticism of his supervisor's job performance does not state a claim for securities fraud; "sour grapes" are no substitute for scienter. *Limantour v. Cray Inc.* 432 F. Supp. 2d 1129, 1142 (W.D. Wash. 2006) (insufficient for confidential witness to merely assert that throughout her tenure she had complained to the defendant about the material internal control weaknesses at issue and had been demoted as a result).

- "CW 80" claims to have told Mr. Casey that the Company's "risk management and accounting standards had dangerously deteriorated, with material effects on the Company's financial statements." ¶ 420. "CW 80's" conclusory allegations do not satisfy the particularity requirements for confidential witnesses. This former employee also avoids any claim that WaMu violated GAAP or any applicable accounting principle or regulation. Rather, he states only that he "believed" there were improper "policies and practices . . . including those *related to* the Company's compliance with GAAP." *Id*. (emphasis added). Such a guarded statement says nothing about the relative merits of the different views on accounting policy. At best,

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 10
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

"CW 80's" account establishes "disagreement and questioning" within the Company, and fails to demonstrate that "[WaMu's] external auditors counseled against the practice or that [management] admitted or was aware [that risk management] was improper." *Metzler*, 540 F.3d at 1069.

In sum, none of the allegations in the Amended Complaint comes close to showing the deliberate, conscious recklessness required for a strong inference of scienter under the PSLRA. Plaintiffs' allegations—whether taken singly or as a whole—are far more consistent with lawful, proper conduct than with any inference that the WaMu Officers sought to profit at the expense of shareholders. *See Tellabs*, 127 S. Ct. at 2509–10 (in determining whether the pleaded facts give rise to a "strong" inference of scienter, court must weigh plausible opposing inferences); *Metzler*, 540 F.3d at 1069 (weighing competing inferences that might be drawn from executive's ambiguous statement about practice being "gray area" and rejecting plaintiffs' argument that statement was "a winking suggestion that [employees] should perpetrate fraud") (affirming FRCP 12(b)(6) dismissal); *Zucco Partners*, 552 F.3d at 1007 ("It is more plausible that [the company's] management was unable to control the accounting processes within the corporation during this integration than that it was systematically using accounting manipulations to make the company seem slightly more financially successful.") (affirming FRCP 12(b)(6) dismissal).

## III.    PLAINTIFFS FAIL TO PLEAD ANY MISSTATEMENTS

In addition to Plaintiffs' failure to allege facts giving rise to a strong inference of scienter, the Amended Complaint fails at even a more basic level: Plaintiffs fail to identify a single instance in which any of the WaMu Officers said something that was not true. The alleged misstatements collected in the Amended Complaint fall into three general categories:

***Statements Removed From Context:*** Most of the statements the Amended Complaint labels as "false" are in fact true—they have just been taken out of context. Plaintiffs did not uncover a secret fraud; they cherry-picked snippets from nearly three years of public statements, stripped away all accompanying context, and tried to piece together a story about bankers aiming "to drive up WaMu's mortgage loan volume" with "deliberate and secret efforts," "corruption"

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 11
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

and "misrepresentation." ¶ 1. This story may be colorful, but it has no basis in the actual statements made by the WaMu Officers.[4]

***Allegations of Appraisal Irregularities:*** The Amended Complaint attempts to spin allegations of appraisal irregularities (allegations that have never implicated the WaMu Officers) into a claim that all of WaMu's financial results were false and misleading. Thus, for example, the Amended Complaint faults Mr. Casey for relaying statistics about loan-to-value ratios (¶ 376) because (by Plaintiffs' telling) the Company's "appraisal practices caused WaMu to originate loans that had artificially low (*i.e.*, favorable) LTV ratios" (¶ 106). Under Ninth Circuit case law, however, a securities fraud plaintiff may not bootstrap generalized claims of operational irregularities (like faulty appraisals of some or even many individual homes) into a well-pled claim that company-wide data is "false and misleading." The Ninth Circuit recently rejected this same tactic in *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008), and this Court should reject it as well.

***Plaintiffs' Faulty Accounting:*** The Amended Complaint repackages allegations about risk management, appraisals and underwriting into a claim that WaMu's Allowance for Loan and Lease Losses ("Allowance") was miscalculated. This allegation is not based on disagreement with any particular accounting policy or practice. Instead, starting from the (false) premise that fraud was afoot, Plaintiffs simply pronounce that WaMu should have anticipated steep future losses—and thus should have ignored data reflecting actual losses. As a matter of law, Plaintiffs' alternative "methodology" is improper under GAAP and would have subjected WaMu to claims of securities fraud. The truth is that WaMu accounted for possible future loan losses in strict accordance with GAAP. No auditor or regulator has ever intimated otherwise.

---

[4] Context is particularly elusive given the extensive cross references that must be followed to ascertain why any particular statement is "false." In paragraph 359, for example, Plaintiffs allege that the Company filed a Form 10-Q containing "the misstatements noted at ¶ 47 above." Paragraph 365 asserts that the statements contained in the Form 10-Q (and noted in paragraph 47) were false '[f]or the reasons stated above at ¶¶ 62–74." Paragraph 62, in turn, incorporates paragraphs 105 through 161, 191 through 239, and 292 through 336. And paragraph 191 incorporates paragraphs 129, 172, 184 and 225 through 226. In short, to understand why Plaintiffs say a one-sentence paragraph (¶ 359) is false and misleading, the reader must review more than 170 separate paragraphs.

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 12
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

## A.    Statements Removed from Context

The allegations of falsity in the Amended Complaint follow a pattern, an example of which is Plaintiffs' claim that Mr. Casey lied when he said in October 2005 and January 2006 that "credit performance continues to be very good" and "strong," and that low credit provisions "reflect[ed] our disciplined credit underwriting and a favorable credit environment" (¶¶ 358, 360, 390–92).  Plaintiffs leave out the *context* of Mr. Casey's statements:  He was explaining to investors that out of the hundreds of billions of dollars in outstanding loans, about *one half of one percent* were not performing at the end of the third quarter of 2005 (0.52%) and fourth quarter of 2005 (0.57%)—figures that the Amended Complaint does not challenge.  Mr. Casey's description ("very good" and "strong") refers to these figures coming in below the Company's five-year target of 1%.  Rummage Decl. Ex. 2 (Oct. 19, 2005 Call Tr.) at 7; Rummage Decl. Ex. 3 (Jan. 18, 2006 Call Tr.) at 4.  There is nothing false or misleading about comparing actual results to targeted results and commenting favorably.

Plaintiffs' challenges to Mr. Rotella's statements touching on credit quality are also typical.  The Amended Complaint sets out Mr. Rotella's 2006 statement that he "felt good about the fact that we've been aggressive in controlling what we can control" and that WaMu was "ahead of the market" from his perspective.  ¶ 431.  Plaintiffs imply that Mr. Rotella's use of the term "ahead of the market" was a generalized assessment of company-wide conditions (*i.e.*, whether WaMu as a whole was "ahead of the market").  In fact, reading this passage with the rest of the words on the page makes clear that Mr. Rotella was discussing WaMu's well-documented effort to "dramatically reduce[] capacity" and "exit[] low-margin channels and products." Rummage Decl. Ex. 8 (Sept. 7, 2006 Investor Day Tr.) at 15.

Placed in this context, Mr. Rotella's statement was plainly true.  The first chart in the Amended Complaint (¶ 192) reflects an $18.2 billion *decline* in the Company's Option ARM portfolio between the first quarter of 2006 and the second quarter of 2008, and a $36.7 billion *decline* in the Company's prime loan portfolio between the second quarter of 2006 and the third quarter of 2007.  The Company's SEC filings reflect its second quarter 2006 decision to stop

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 13
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

originating mortgages through its correspondent channel.  Rummage Decl. Ex. 7 (Second

Quarter 2006 Form 10-Q) at 35.  *See also* Rummage Decl. Ex. 11 (First Quarter 2007 Form 10-

Q) at 2 (reflecting sale of more than $18 billion of loans held for sale during the first quarter of

2007); Rummage Decl. Ex. 13 (2007 Form 10-K) at 18.  In other words, the pleaded facts were

just as Mr. Rotella said.

The Amended Complaint makes a practice of taking true statements out of context to

imply falsity for each of the four WaMu Officers:

### 1.  Thomas Casey

Plaintiffs fault Mr. Casey for saying that WaMu was "taking steps" to "reduce potential

future exposure," and that the Company was "effectively" and "proactive[ly] manag[ing]" its

"portfolio to minimize credit risk" using a "framework" based upon a "set of credit risk

concentration limits."  ¶¶ 358, 360–61, 363, 390.  These descriptions were not uttered in a

vacuum.  Rather, Mr. Casey made them while conveying ***specific, truthful information*** about

how the Company was managing risk.  On the October 19, 2005 earnings call during which

Mr. Casey stated that WaMu was "managing [its] credit risk" (¶ 358), he described how, in the

third quarter of 2005, the Company had offloaded "80% of [WaMu's] single family residential

volume in the period" and "90% of [WaMu's] option ARM volume."  Rummage Decl. Ex. 2

(Oct. 19, 2005 Call Tr.) at 7.  And Mr. Casey's statement about "proactively manag[ing] our

portfolio" on the January 18, 2006 earnings call (¶ 360) was part of his larger point that the

Company "continue[d] to remix its balance sheet" away from "single family residential loans."

Rummage Decl. Ex. 3 (Jan. 18, 2006 Call Tr.) at 4.  This is borne out by the steps discussed

above to reduce loan volume and shrink WaMu's portfolio.  Am. Compl. ¶ 192; Rummage Decl.

Ex. 7 (Second Quarter 2006 Form 10-Q) at 35; Rummage Decl. Ex. 13 (2007 Form 10-K) at 18;

Rummage Decl. Ex. 11 (First Quarter 2007 Form 10-Q) at 2.

Plaintiffs also claim that Mr. Casey falsely stated that WaMu was "being selective with

[its] underwriting" (¶ 394), but say nothing about the Company's repeated, detailed disclosures

on that very topic.  *See* Rummage Decl. Ex. 5 (2005 Form 10-K) at 54; Rummage Decl. Ex. 10

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 14
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

(2006 Form 10-K) at 52 (showing the decline of the Company's outstanding Option ARM loans and greater than 80% LTV home loans as a percentage of the Company's total loan portfolio). Indeed, the Complaint itself illustrates that the Company was tightening its standards at the time other banks were loosening theirs. Chart 2 (¶ 239), for example, shows that during the putative class period WaMu was reducing its ratio of loan amount to borrower income while most other banks' ratios were increasing. Nor do Plaintiffs account for Mr. Casey's warning that "a more difficult environment may be ahead of us." ¶ 360.

Finally, Plaintiffs disagree with Mr. Casey's characterization of the Company as "very disciplined" in growing its balance sheet (¶ 363), and his statement that he "[did]n't see" the Company having to repurchase increasing amounts of its securitized subprime loans because he believed that repurchases were "trending down" (¶ 390). Again, Mr. Casey was not making these statements in a vacuum: the Company's SEC filings show reserves for repurchasing subprime mortgages decreasing from $40 million in the fourth quarter of 2005 to $7 million in the first quarter of 2006 to $3 million in the second quarter of 2006. Rummage Decl. Ex. 6 (First Quarter 2006 Form 10-Q) at 10; Rummage Decl. Ex. 7 (Second Quarter 2006 Form 10-Q) at 12. Plaintiffs tacitly concede the accuracy of these corroborative statements.

### 2. Stephen Rotella

Plaintiffs take issue with Mr. Rotella's 2006 statements that he "feel[s] pretty good about the credit risk" of WaMu's Option ARM products (¶ 429); that "[t]he credit quality on those products has been quite good" and "terrific" (¶¶ 452–53); and that there was "little evidence of any real deterioration in the consumer" (¶¶ 430, 454). These opinions were based on the facts that Mr. Rotella contemporaneously provided, which Plaintiffs do not challenge: "the average LTV in that portfolio is roughly 69% at inception and now stands at about 55% when you take into account appreciation of home prices." Rummage Decl. Ex. 4 (Jan. 31, 2006 Citigroup Conf. Tr.) at 9. The extraordinarily low non-performance ratio for WaMu's portfolio in the second quarter of 2006 also provides critical context. *See* Rummage Decl. Ex. 2 (Oct. 19, 2005 Call Tr.) at 7; Rummage Decl. Ex. 3 (Jan. 18, 2006 Call Tr.) at 4; *see also* Rummage Decl. Ex. 6 (First

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 15
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

Quarter 2006 Form 10-Q) at 31, Rummage Decl. Ex. 7 (Second Quarter 2006 Form 10-Q) at 37 (only 0.57% of loans were not performing at the end of the 1st Quarter 2006, and only 0.62% at the end of the 2nd Quarter 2006, well below the Company's five-year target of 1%). Similarly, while Plaintiffs complain that Mr. Rotella said WaMu was "tightening credit" (¶ 433) and was "prudent in [its] credit extension" (¶ 453), those comments were based on the undisputed fact that "the volume numbers [were] down 51% year on year" (¶ 432).

### 3. Ronald Cathcart

Plaintiffs fault Mr. Cathcart for predicting that WaMu's "portfolio should remain well secured and the borrower should have sufficient equity to refinance, should they choose to do so" (¶ 473) and opining that WaMu's Option ARM portfolio was "very sound" such that WaMu was "comfortable" with it (¶ 492). These were not blanket statements; they were characterizations of specific facts that Mr. Cathcart had just conveyed: that the portfolio had "a weighted average FICO score of 708" (which Plaintiffs do not challenge) and that in no case could a single Option ARM loan "increase beyond 25% of its original principal amount without triggering a recast of the mortgage." Rummage Decl. Ex. 8 (Sept. 7, 2006 Investor Day Tr.) at 31–32.

Similarly, while the Amended Complaint takes issue with Mr. Cathcart's 2006 statements that WaMu had "effective underwriting process[es] and borrower disclosures" (¶ 492) and the Company was watching its credit profile "diligently" (¶ 473), Plaintiffs omit Mr. Cathcart's accompanying explanation that WaMu had implemented "concentration limits for geography, high loan to value and low FICO exposures" and had "sold 71% of our '05 and '06 option ARM production in order to reduce portfolio concentration." Rummage Decl. Ex. 8 (Sept. 7, 2006 Investor Day Tr.) at 29.

Finally, Plaintiffs assert that Mr. Cathcart made a false statement when noting the "stronger credit quality" of WaMu's single-family residential portfolio in 2007. ¶ 568. The phrase "stronger credit quality," however, was one part of a longer sentence comparing relative credit quality across different loan portfolios within the Company: "Our single family residential portfolio on the other hand benefits from stronger credit quality ***than our subprime portfolio***."

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 16
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

2007 Investor Day Tr. at 30 (emphasis added).  Plaintiffs do not challenge Mr. Cathcart's

comparative statement.  Unfairly removing a portion of the sentence from its proper context does

not meet the PSLRA's "exacting requirements for pleading 'falsity.'" *Metzler*, 540 F.3d at 1070.

### 4.    David Schneider

The Amended Complaint challenges a handful of statements Mr. Schneider made on

three occasions over a two year period.  Plaintiffs complain that Mr. Schneider described

WaMu's risk management as "effective," a "top priority," and an area in which WaMu "invested

a significant amount in terms of talent and technology."  ¶ 502.  Nothing in the Amended

Complaint, however, suggests that WaMu did not make significant investments of "talent and

technology" in risk management.  Plaintiffs also challenge Mr. Schneider's September 2006

statement that "[o]n subprime, we have seen, as others have seen, some early payment default

and repurchase activity.  We saw most of that occur for us in late '05, Q4 '05, and first quarter of

'06."  ¶ 514.  This statement is consistent with the Company's audited financial results—which

never have been restated.  *See* Rummage Decl. Ex. 5 (2005 Form 10-K) at 21 ("In the fourth

quarter of 2005, the Company experienced increased incidents of repurchases of early payment

default loans sold by Long Beach Mortgage Company and this trend is expected to continue in

the first part of 2006."); Rummage Decl. Ex. 6 (First Quarter 2006 Form 10-Q) at 10; Rummage

Decl. Ex. 7 (Second Quarter 2006 Form 10-Q) at 12 ("In the fourth quarter of 2005, the

Company experienced increased incidents of repurchases of early payment default loans sold by

Long Beach Mortgage Company.").

### B.    Allegations of Appraisal Irregularities

The Amended Complaint does not allege that any of the WaMu Officers made statements

concerning appraisals.  All of the statements Plaintiffs label as "false" in the appraisal sections of

the Amended Complaint actually concern the loan-to-value (LTV) ratios of various loan

portfolios.  *See, e.g.*, ¶ 376 (statement that the majority of the Company's Option ARM portfolio

had loan-to-value ratios below 80%); ¶ 379 (prediction that "losses in the prime loans [would] be

much lower due to the lower LTVs and high FICO profile" of that portfolio).  In short, the

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 17
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

Amended Complaint labels as "false and misleading" every public statement that references LTVs on the theory that improper "appraisal practices caused WaMu to originate loans that had artificially low (*i.e.*, favorable) LTV ratios . . . ." ¶ 106. Beyond conclusory adjectives like "widespread" and "dramatic," Plaintiffs make no effort to quantify the effect of the alleged appraisal practices on a portfolio-wide basis. *See In re Charles Schwab Securities Litigation*, 2009 WL 262456, at *23 (N.D. Cal. 2009) (no well-pled allegations of portfolio-wide falsity where plaintiffs "identifie[d] only fourteen assets alleged to have been mispriced out of a portfolio of hundreds if not thousands of assets" valued at billions of dollars).

Ninth Circuit law precludes Plaintiffs' attempt to attack company-wide financial results on the bare assertion that some appraisals may have been inflated. "[T]his Circuit has consistently held that the PSLRA's falsity requirement is not satisfied by conclusory allegations that a company's class period statements regarding its financial well-being are *per se* false based on the plaintiff's allegations of fraud generally." *Metzler*, 540 F.3d at 1070 (citing *In re Vantive Corp. Securities Litigation*, 283 F.3d 1079, 1086 (9th Cir. 2002); *Ronconi*, 253 F.3d at 429–32; *Silicon Graphics*, 183 F.3d at 984–85); *see also California Public Employees Retirement System v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) (affirming dismissal with prejudice of plaintiffs' conclusory assertion that the company's "first and second quarter 1999 results were falsified" as a result of company-wide "fraud").

The facts in *Metzler* closely parallel this case. There, the plaintiffs relied on regulatory investigations of the company (an operator of for-profit vocational schools) by the U.S. Department of Education and the California Attorney General concerning an alleged "Company-wide scheme to inflate enrollment figures in order to misappropriate federal financial aid funding." 540 F.3d at 1070. The *Metzler* plaintiffs adopted the regulators' allegations *in toto*, and on that basis pronounced "'[a]ll of [the company's] stated financial results during the entire Class Period . . . false and misleading . . . .'" *Id.* (quoting complaint). Noting that the complaint mistook "quantity for quality . . . and fail[ed] to sufficiently allege facts that demonstrate the falsity of [the company's] characterizations of its financial health," the Ninth Circuit refused to

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 18
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

accept the plaintiffs' "vague . . . allegations of fraud generally" as well-pled evidence that all of the company's financial statements during the class period were false. *Id.* The Ninth Circuit affirmed dismissal with prejudice of the *Metzler* complaint for failure to state a claim because, in addition to failing to connect its general fraud allegations to specific false statements, it failed to "connect the DOE or California Attorney General investigations to any false or misleading statement—*i.e.*, some affirmative statement or omission by [the company] that suggested it was *not* under any regulatory scrutiny." *Id.* at 1071 (emphasis in the original).

As in *Metzler*, Plaintiffs here "mistake quantity for quality," and rely on general allegations of fraud to demonstrate the falsity of virtually every statement made during the Class Period. *Id.* at 1070. Plaintiffs similarly try to turn a regulator's investigation of appraisal practices at WaMu into a federal securities fraud claim by adopting the regulator's (unproven) allegations and pronouncing WaMu's financial results "false and misleading" on that basis. Plaintiffs' theory is materially indistinguishable from the theory rejected by the Ninth Circuit in *Metzler*. The same result—dismissal with prejudice on the pleadings—should follow.

## C. Plaintiffs' Faulty Accounting

The Amended Complaint repackages allegations concerning risk management, appraisals and underwriting into a claim that WaMu's Allowance was miscalculated. This allegation does not rest on disagreement with any accounting policy or practice, or any claim that WaMu tried to deceive auditors, regulators, or the public about how it accounted for loan losses. Instead, Plaintiffs start from the (false) premise that fraud was afoot at WaMu, and then assert that the Company should have revised all its financials to anticipate steep future losses. *See* ¶¶ 402–04, 406–07, 409–10, 412, 415–16, 609. Plaintiffs claim, in other words, that WaMu's accounting professionals ought to have ignored the data reflecting actual losses in WaMu's loan portfolio and instead used made-up numbers like those in Chart 6 of the Amended Complaint. ¶ 326.

Plaintiffs oversimplify the process by which financial institutions provision for loan losses. At least nine separate governmental and administrative agencies have issued extensive

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 19
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

written standards, guidelines and policy statements on loan loss provisioning.[5]  The Amended

Complaint uses selected words and phrases from selected standards without putting them into

context.  Even so, however, the very regulations and accounting principles relied upon in the

Amended Complaint state that provisioning for loan losses requires "**current** judgments about

the credit quality of" issued loans "based on **current and reliable data**."  Compl. ¶¶ 298–99

(citing SAB 102).  Plaintiffs do not—because they cannot—allege WaMu's accounting

professionals based their judgments about reserving on anything other than data that was current

at the time.  That data showed loan losses were so low at the end of 2005 that WaMu had to

"revise [its] credit provision outlook downward" to remain in compliance with GAAP.  ¶ 390.

Significantly, the Amended Complaint does not allege that WaMu's external auditor counseled

against the Company's approach to setting loss reserves.

       Plaintiffs' alternative "methodology" is improper under GAAP.  Had WaMu adopted it,

the Company could well have been subject to claims of securities fraud.  In *Countrywide*, for

example, the court rejected nearly identical allegations that "Countrywide's reported loan loss

reserves [were] misleading."  *In re Countrywide Derivative Litigation*, 554 F. Supp. 2d 1044,

1070 (C.D. Cal. 2008).  There, as here, plaintiffs' "loan loss reserve allegations buil[t] upon the

[inference] that Defendants knew serious departures from underwriting standards would result in

the origination of low-quality loans (or that they acted with deliberate recklessness with respect

to this possibility)."  *Id.*  Judge Pfaelzer rejected the plaintiffs' claims, relying in part on the fact

---

[5]  These instructions include the Statement of Financial Accounting Standards No. 5: "Accounting for Contingencies" (March 1975); SEC Accounting Series Release No. FR-28: "Accounting for Loan Losses by Registrants Engaged in Lending Activities" (December 1986) (Article 9, Section 401.09); Statement of Financial Accounting Standards No. 114: "Accounting by Creditors for Impairment of a Loan" (May 1993); Interagency Policy Statement on the ALLL (December 1993); Emerging Issues Task Force Topic D-80: "Application of FASB Statements No. 5 and 114 to a Loan Portfolio" (May 1999); Joint Interagency Letter to Financial Institutions (July 1999); AICPA Audit and Accounting Guides:  Banks and Savings Institutions (Ch. 7):  "Credit Losses" (May 2000) & Credit Unions (Ch. 6):  "Allowance for Loan Losses" (May 2000); FFIEC Policy Statement on ALLL Methodologies and Documentation for Banks and Savings Institutions (July 2001); SEC Staff Accounting Bulletin No. 102:  "Selected Loan Loss Allowance Methodology and Documentation Issues" (July 2001); and NCUA Interpretative Ruling and Policy Statement 02-3:  "Allowance for Loan and Lease Losses Methodologies and Documentation for Federally Insured Credit Unions" (May 2002).

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 20
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

that "substantially increasing loan loss reserves to account for future losses that would result from badly underwritten loans might in *itself* violate GAAP" because "GAAP allows reserves only for those future losses that are (i) 'probable' as of the reporting date and (ii) reasonably capable of being estimated." *Id*. at n.31 (emphasis in the original). The court cited the principle that "losses 'should not be recognized before it is probable that they have been incurred, even though it may be probable based on past experience that losses will be incurred in the future' and that 'it is inappropriate to consider possible or expected future trends that may lead to additional losses.'" *Id*.

Consistent with Judge Pfaelzer's observations in *Countrywide*, both banking regulators and the SEC prohibit financial institutions from increasing their Allowances based on perceived risks of non-performance or concerns about possible future events. Rummage Decl. Ex. 9 (Dec. 13, 2006 Interagency Policy Statement on the Allowance for Loan and Lease Losses) at 3 n.7, 12 ("[T]he purpose of the [Allowance] is ***not*** to absorb all of the risk in the loan portfolio . . . . Institutions that have high levels of risk in the loan portfolio or are uncertain about the effect of possible future events on the collectibility of the portfolio should address these concerns by maintaining higher equity capital and not by arbitrarily increasing the ALLL in excess of amounts supported under GAAP.") (emphasis added); *see also, e.g.*, Rummage Decl. Ex. 15 (Matthias Rieker, "Revamp Would Help Banks Boost Reserves," Wall Street Journal (June 23, 2009)) (explaining how "the SEC worries that banks can use [excess] loan-loss provisions to smooth earnings" and reporting that the SEC forced SunTrust Bank to reduce its loan loss reserve because "the agency felt the reserve was too high").

Plaintiffs also fault Mr. Casey for describing how the Company reviewed loan loss data throughout the year and closely monitored trends in the housing market. ¶¶ 408, 411. But the public filings referenced in the Complaint demonstrate that, as the economy and credit markets turned south, WaMu wrote down impaired assets (*e.g.*, loans becoming more likely to default). Rummage Decl. Ex. 13 (2007 Form 10-K) at 16–17 (accruing loan loss provision in 2007 at nearly twice the level of actual charge-offs in response to the deteriorating credit market). The

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 21
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

undisputed fact that WaMu did, in fact, write down impaired assets is fatal to Plaintiffs' claims that the Company's accounting professionals were remiss in their duties. *See, e.g.*, *Zucco Partners*, 552 F.3d at 999–1000 (affirming dismissal with prejudice of securities fraud complaint despite confidential witness's claim that he was directed by CEO "not to write down obsolete inventory because [it] would result in the Company's missing market expectations. Although this statement, considered in isolation, might be enough to demonstrate scienter, it is notable that [the company] *did* write down significant amounts of obsolete inventory in 2004.").

## IV.  PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Federal law precludes a securities fraud complaint from proceeding further absent well-pled facts showing that "the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4); *see Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005); *Metzler*, 540 F.3d at 1063; *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005). As with scienter and falsity, Plaintiffs must plead loss causation as to each defendant; it is not sufficient for Plaintiffs to allege that they lost money as a result of the collective acts of all defendants. The statute requires a showing that "the defendant" caused the loss in question, 15 U.S.C. § 78u-4(b)(4), which "may only reasonably be understood to mean 'each defendant' in multiple defendant cases, as it is inconceivable that Congress intended liability of any defendants to depend on whether they were all sued in a single action or were each sued alone in several separate actions." *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364–65 (5th Cir. 2004); *accord Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004) (finding PSLRA's use of "the singular term 'the defendant'" to mean "'each defendant'" as the "the most plausible reading in light of congressional intent"); *In re Impac Mortgage Holdings Securities Litigation*, 554 F. Supp. 2d 1083, 1093 (C.D. Cal. 2008).[6]

---

[6]  Although *Southland*, *Phillips* and *Impac* address the PSLRA's standards for pleading falsity and scienter, their analysis of the statutory term "the defendant" applies equally in the loss causation context. *See Commissioner of Internal Revenue v. Lundy,* 516 U.S. 235, 250 (1996) (discussing "the 'normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning'"); *Nijhawan v. Holder*, 129 S. Ct. 2294, 2301 (2009) ("Where,

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 22
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax:  (206) 757-7700

Plaintiffs' loss causation allegations address all the defendants as a group. *See* ¶ 628 ("Defendants' wrongful conduct . . . caused the economic loss"); *accord* ¶¶ 629, 633, 639. Such undifferentiated allegations addressing "the defendants" as a collective group are insufficient to state a claim against any individual defendant, under any pleading standard. *See, e.g.*, *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 219 (S.D.N.Y. 1997) ("Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint against multiple defendants 'indicate clearly . . . the basis upon which the relief is sought against the particular defendants.'"); *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1549 (D. Colo. 1990) ("where . . . there are multiple defendants, the complaint should specify what conduct by each defendant gives rise to the asserted claim"); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1248 (3d ed. 2009).

## V. PLAINTIFFS' CONTROL PERSON CLAIMS FAIL

The Amended Complaint also names two individuals at WaMu who held the title Controller: John Woods (who served from December 2005 through March 2007) and Melissa Ballenger (March 2007 through October 2008). The Amended Complaint does not allege that Mr. Woods or Ms. Ballenger made any misstatements or deceived or defrauded anyone. Rather, they are named solely in the "control person" count. *See* 15 U.S.C. § 78t(a). The Court should dismiss the "control person" claims against Mr. Woods and Ms. Ballenger for two reasons:

***First***, Plaintiffs have failed to plead a primary securities fraud violation as to any defendant. The absence of a primary violation requires dismissal of any "control person" claims. *See Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

***Second***, the Amended Complaint makes plain that Plaintiffs' claims of primary violations have nothing to do with WaMu's accounting policies, practices or personnel. Rather, Plaintiffs have dressed up their risk management, underwriting and appraisal allegations as a collective "accounting" claim based on a demonstrably false interpretation of how the Allowance ought to

---

as here, Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations.").

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 23
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700

have been calculated. Plaintiffs have not stated a control person claim if "the controlling person . . . did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t. *See also Paracor*, 96 F.3d at 1163–64 (affirming dismissal of "control person" claim against a CEO who was not alleged to have "control" over the specific transaction at issue); *In re Cornerstone Propane Partners Securities Litigation*, 416 F. Supp. 2d 779, 789–90 (N.D. Cal. 2005). Here Plaintiffs do not contend that either Mr. Woods or Ms. Ballenger exercised any "control" over WaMu's underwriting standards, risk management policies, or appraisal practices; they have been named solely for occupying the position of a "principal accounting officer." ¶¶ 26–27. Accordingly, Plaintiffs have not stated a control person claim.

## VI. CONCLUSION

For the reasons set out above, the WaMu Officers respectfully request that the Court dismiss all claims against them with prejudice for failure to state a claim upon which relief can be granted.[7]

Dated this 17th day of July, 2009.

SIMPSON THACHER & BARTLETT LLP

Barry R. Ostrager (*pro hac vice*)
Mary Kay Vyskocil (*pro hac vice*)
425 Lexington Avenue
New York, New York 10017
Tel.:     (212) 455-2500
Fax:     (212) 455-2502
Email:   bostrager@stblaw.com
            mvyskocil@stblaw.com

-and-

Robert J. Pfister (*pro hac vice*)
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Tel.:     (310) 407-7500
Fax:     (310) 407-7502
Email:   rpfister@stblaw.com

DAVIS WRIGHT TREMAINE LLP

By:   */s/ Stephen M. Rummage*
        Stephen M. Rummage, WSBA #11168
        Steven P. Caplow, WSBA #19843
        1201 Third Avenue, Suite 2200
        Seattle, Washington 98101-3045
        Tel.:     (206) 757-8108
        Fax:     (206) 757-7136
        E-mail:  steverummage@dwt.com
                    stevencaplow@dwt.com

*Attorneys for Thomas Casey, Stephen Rotella, Ronald Cathcart, David Schneider, John Woods, and Melissa Ballenger*

---
[7]   The WaMu Officers adopt the arguments advanced by other defendants, as applicable.

WAMU OFFICERS' MOTION TO
DISMISS PLAINTIFFS' AMENDED
SECURITIES COMPLAINT—Page 24
Case No. 2:08-md-01919-MJP
Lead Case No. C08-0387-MJP

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
-and-
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Tel.: (206) 622-3150
Fax: (206) 757-7700