|   |   |
|---|---|
| | THE HONORABLE MARSHA J. PECHMAN |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES, DERIVATIVE & ERISA LITIGATION, | CASE NO. 2:08-md-1919 MJP<br><br>**DEFENDANT KERRY K. KILLINGER'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR:** August 25, 2009<br><br>**ORAL ARGUMENT REQUESTED**<br><br>OD-KKK-3<br><br>Lead Case No. C08-387 MJP |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION,<br><br>This Document Relates To: ALL CASES | |

**KILLINGER'S REPLY ISO HIS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT [OD-KKK-3]**
MASTER NO.: 08-MD-1919 MJP

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

# TABLE OF CONTENTS

|   | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
| I. PLAINTIFFS DO NOT ADEQUATELY ALLEGE FALSITY | 2 |
|     A. Challenged statements about WaMu's underwriting and credit quality | 2 |
|     B. Challenged statements related to appraisals | 7 |
|     C. Challenged statements related to risk management | 8 |
|     D. Challenged financial statements | 8 |
| II. PLAINTIFFS DO NOT CREATE ANY INFERENCE OF SCIENTER | 10 |

**KILLINGER'S REPLY ISO HIS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT [OD-KKK-3]**
MASTER NO.: 08-MD-1919 MJP

i

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brody v. Transitional Hosps. Corp.*,
 280 F.3d 997 (9th Cir. 2002) ........................................................................................... 2, 5

*DiLeo v. Ernst & Young*,
 901 F.2d 624 (7th Cir. 1990) ............................................................................................... 8

*In re Vantive Corp. Sec. Litig.*,
 283 F.3d 1079 (9th Cir. 2002) ......................................................................................... 8, 9

*In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litig.*,
 No. 2:08-MD-1919, 2009 WL 1393679 (W.D. Wash. May 15, 2009) .......................*passim*

*Nursing Home Pension Fund v. Oracle Corp.*,
 380 F.3d 1226 (9th Cir. 2004) ............................................................................................. 8

*Ronconi v. Larkin*,
 253 F.3d 423 (9th Cir. 2001) ............................................................................................... 3

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) ........................................................................................... 2, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 127 S. Ct. 2499 (2007) .................................................................................................. 2, 12

**KILLINGER'S REPLY ISO HIS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT [OD-KKK-3]**
**MASTER NO.: 08-MD-1919 MJP**

ii

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

Kerry Killinger, former Chief Executive Officer of Washington Mutual, Inc. ("WaMu"), submits this reply to Lead Plaintiff's Opposition ("Opp. at _") to his Motion to Dismiss ("Motion" or "Mot. at _") the Amended Consolidated Class Action Complaint ("Complaint" or "¶ _").

# INTRODUCTION

Mr. Killinger's motion to dismiss exposes the glaring weaknesses in plaintiffs' allegations, which became more apparent when stripped of the camouflage of the first jumbled complaint. In the face of Mr. Killinger's straightforward arguments, plaintiffs once again resort to diversionary tactics: The Opposition ignores governing law and much of the Motion, and, with great bravado, attacks straw-man arguments invented by plaintiffs, and mischaracterizes both the Complaint and the documents on which plaintiffs purport to rely. But when the Complaint is scrutinized and measured against the correct standard of law, it is clear that it fails to state a claim under either Section 11 or Section 10(b). Fatal to all claims is the lack of contemporaneous facts to show that any of Mr. Killinger's statements were false or misleading. Fatal to the Section 10(b) claims is the lack of specific facts creating any inference of Mr. Killinger's scienter.

# ARGUMENT

Now that the Court has forced plaintiffs to identify every challenged statement, the "facts" that supposedly demonstrate falsity, and the scienter allegations against each defendant, the paucity of these allegations is even more clear. As a result, plaintiffs try to head off critical review of the Complaint, asserting that the Court's prior order implicitly upheld plaintiffs' claims, and that defendants are therefore precluded from "rehash[ing]" them. Opp. at 1; Opp. at 7-8, 19-20 (similar). But while the Court upheld plaintiffs' Section 11 claim related to the October 2007 offering, it pointedly refrained from ruling on the other allegations. In particular, the Court found plaintiffs made "no effort to connect a particular statement made by any defendant with allegations as to why that statement was false or misleading or with allegations of facts giving rise to a strong inference of scienter." *In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litig.*, No. 2:08-MD-1919, 2009 WL 1393679, at *11 (W.D. Wash. May 15, 2009) ("Order"). As a result, the Court held that plaintiffs failed to give defendants notice of the grounds for their Section 10(b) claims, in

regard to *both* falsity and scienter, and ordered a more definite statement. *Id.* at *12. Now that plaintiffs have recast their allegations, these allegations are subject to scrutiny on the merits.

Consistent with their desire to avoid critical analysis, plaintiffs also ask the Court to effectively ignore documents properly subject to judicial notice and incorporated by reference in the Complaint. Opp. at 3. Accordingly, plaintiffs assert that the Court should draw no inferences from these documents in favor of defendants, and that reference to them constitutes "contested factual assertions" that cannot be decided on a motion to dismiss. Opp. at 12; *id*. at 3 (similar). But plaintiffs cannot escape dismissal by mischaracterizing incorporated documents or ignoring facts in documents subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Indeed, such documents merit special attention in securities fraud cases. First, the documents incorporated by reference are essential to determining whether, when the statements are viewed in their entirety and in context, plaintiffs have pleaded a false or misleading statement. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Second, the Supreme Court has explicitly held that when evaluating "plausible opposing inferences" of scienter under Section 10(b), the Court "must consider the complaint in its entirety, . . . [including] documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).

Thus, the Court should view plaintiffs' revised allegations with fresh skepticism, focusing on three key questions: First, exactly what did Mr. Killinger say that is allegedly false or misleading? Second, what facts show the falsity of these statements? And finally, what specific facts indicate Mr. Killinger knew his statements were false or misleading? Plaintiffs' failure to adequately answer these questions makes it clear they cannot state a claim against Mr. Killinger.

I. **PLAINTIFFS DO NOT ADEQUATELY ALLEGE FALSITY**

A. **Challenged statements about WaMu's underwriting and credit quality**

Plaintiffs mischaracterize Mr. Killinger's statements about WaMu's underwriting and credit quality by taking them out of context, and then fail to match them against specific contemporaneous facts that show falsity. In place of facts, plaintiffs rely on vague, anecdotal, and

**KILLINGER'S REPLY ISO HIS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT [OD-KKK-3]**
MASTER NO.: 08-MD-1919 MJP

2

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

scattered opinions from confidential witnesses ("CWs") about the quality of WaMu's underwriting, none of which have any bearing on the alleged falsity of the statements.

*Plaintiffs do not allege facts showing falsity.* Plaintiffs claim the Complaint is "replete" with contemporaneous facts showing falsity. Opp. at 2. And yet, it fails to point to *any* such facts. Indeed, despite plaintiffs' efforts to present their most compelling allegations, their three examples only highlight the inadequacy of their claims. Opp. at 10-11. For example, plaintiffs juxtapose a *November 2005* statement by Mr. Killinger that "[w]e have excellent processes, policies, underwritings" with a CW's claim that as of *June 2005*, WaMu's "A paper" included loans with FICO scores in the 500s. Opp. at 11; ¶¶ 171, 213. But the CW statement lacks specific facts to make it meaningful: How often were such loans made, during what time period, and under what conditions? Without such facts *and* a standard by which to judge whether underwriting processes were "excellent" (Mot. at 9-10), this claim indicates nothing about the veracity of the statement Mr. Killinger made five months later. Mot. at 7-10; *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (facts only bear on falsity if "necessarily inconsistent" with challenged statements).

Similarly, plaintiffs assert that Mr. Killinger's statement that WaMu had "tighten[ed]" underwriting is false because a branch-level CW said exceptions were "part of the norm." Opp. at 11. Of course exceptions are "part of the norm." It is customary for underwriting standards to include guidelines for exceptions. Mot. at 8 n.3. This vague statement tells us nothing about the kinds of exceptions made or how they affected loan quality. It is also completely unspecific as to time, and says nothing about how the use of exceptions changed – and thus, has no bearing on whether underwriting was "tightened." Finally, plaintiffs contend that a claim by a branch-level CW that WaMu underwrote Option ARMs to the "teaser" rate demonstrates the falsity of Mr. Killinger's statement that WaMu, as a whole, underwrote its Option ARMs to the fully indexed rate. Opp. at 11. But the law is clear that the claim of a branch-level employee does not show the falsity of a statement discussing company-wide conditions. Mot. at 4.[1]

---

[1] Contrary to the Opposition's assertion, the Complaint does not cite a document that "shows that Option ARMs were underwritten at the teaser rate" – it merely paraphrases a guide for *purchasing* loans. Opp. at 9-10; ¶ 226.

KILLINGER'S REPLY ISO HIS MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
[OD-KKK-3]
MASTER NO.: 08-MD-1919 MJP

3

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

The Reform Act requires that a CW statement, like any other allegation, contain specific facts with indicia of reliability. Mot. at 3-4. But the CW statements in the Complaint consist of anecdotal comments, unsupported opinions, meaningless hyperbole, and unsupported speculation, often from people in no position to know of company-wide conditions. Mot. at 7-8. Although the Opposition disputes this characterization (Opp. at 8-9), the examples it uses demonstrate the point: It cites to CW claims that it was "commonplace" to go outside underwriting guidelines, that these guidelines were "loose to the point of disbelief," and that stated-income borrowers could submit letters from "anyone." Opp. at 7. These vague, exaggerated claims are clearly devoid of the specific facts the Reform Act requires. Nor do these statements "paint a consistent picture." Opp. at 9. Plaintiffs cannot aggregate all CW statements and contend they corroborate one another because they say various negative things. A CW who says risk management was "stupid" does not "corroborate" a CW who is "morally opposed" to Option ARMs. *See* ¶¶ 205, 480. Rather, the Court should only consider statements containing specific and reliable facts, and then compare these facts to see if they are consistent. This exercise indicates that many of the Complaint's flagship allegations are actually *contradictory*. Mot. at 12-14. For example, if guidelines were "loose to the point of disbelief," why was it "so commonplace" to go outside them? Opp. at 7.

*Plaintiffs do not demonstrate Mr. Killinger's statements were misleading.* A securities fraud case turns on what was said. To determine if plaintiffs have adequately alleged a false or misleading statement, the Court must read each challenged statement. But in an attempt to unfairly paint Mr. Killinger's statements as careless and uniformly positive, plaintiffs carefully pick and choose a few words, and omit the full context of what he said. When Mr. Killinger's full statements are considered, it is clear that his opinions were measured, that his conclusions were supported by specific facts, and that he discussed potentially negative metrics and troubling trends at great length. Mot. at 5-7. In other words, it is clear his statements were not misleading.

Yet plaintiffs inexplicably claim that "Killinger is wrong" in contending that the Complaint omits context. Opp. at 8. Equally mysterious is plaintiffs' claim that Mr. Killinger "cherry-picked" "*supposed*" context. Opp. at 8, 12. Far from "cherry-pick[ing]," Mr. Killinger

**KILLINGER'S REPLY ISO HIS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT [OD-KKK-3]**
MASTER NO.: 08-MD-1919 MJP

4

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

gave the Court the entire "tree" – providing the context for *every single one* of Mr. Killinger's challenged statements. Mot. at 5-7; App. 1; Exs. A-AA. Plaintiffs do not dispute such context is crucial, especially in a case such as this one, where plaintiffs claim statements were misleading because of omissions. A statement is only misleading if, as a whole, it creates a "false impression of the state of affairs." Mot. at 2-3, 5-7. This determination *necessarily* implicates consideration of the full statement – not to judge the "materiality of an omission," as plaintiffs assert (Opp. at 12), but to determine if plaintiffs have adequately pleaded the existence of a misleading statement.

Mr. Killinger's full statements contain detailed facts to support his conclusions, as well as information weighing in the other direction. Mot. at 5-7; Exs. A-AA. Plaintiffs do not contest this. Opp. at 8. Instead, they claim the statements were nonetheless misleading because they failed to disclose "facts" regarding "lack of documentation, lower collateral requirements, numerous exceptions to underwriting guidelines, and systematic inflation of appraisal values." Opp. at 8. But plaintiffs do not allege any real undisclosed "facts." Plaintiffs have not shown a "systematic inflation of appraisals." *See infra* pp. 7-8. And the rest of the information listed *was* disclosed. Numerous statements disclosed that WaMu made "stated-income loans" (which by definition "lack . . . documentation"), issued loans with LTVs over 80% (*i.e.*, "lower collateral requirements"), and made exceptions to guidelines. Mot. at 8-9; Ex. F at 54, 56-58; Ex. Y at 9 (non-highlighted portion). And even if a statement does not include all related facts, it is not misleading unless it creates an overall false impression. *Brody*, 280 F.3d at 1006. Mr. Killinger's statements were made in the context of other disclosed information, and *Brody* explicitly rejects the idea that to avoid being misleading, he had to reiterate all these facts whenever he spoke. *Id*.

A review of Mr. Killinger's full statements thus defeats the claim they were misleading. Accordingly, plaintiffs try to keep the Court from considering this context, by alleging it involves "contested factual assertions . . . [that] should not be resolved on a motion to dismiss." Opp. at 12. Plaintiffs deliberately miss the point, and turn the Reform Act on its head. It is *plaintiffs'* burden to allege facts showing falsity. Since Mr. Killinger used specific facts to support the conclusions that plaintiffs challenge, it is *plaintiffs'* burden to demonstrate those facts were either inaccurate or

KILLINGER'S REPLY ISO HIS MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
[OD-KKK-3]
MASTER NO.: 08-MD-1919 MJP

5

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1  did not support those conclusions. Plaintiffs cannot simply write off these parts of the statements

2  as "contested factual assertions." But plaintiffs ignore almost all the metrics Mr. Killinger cited to

3  support his statements, taking exception only to the statement that subprime originations had been

4  cut in half, by asserting that this affected "only loan *volume*, not quality." Opp. at 12. This is

5  illogical. Subprime lending, by definition, carries greater credit risk. Thus, such a substantial

6  reduction in not only the quantity, but also the market share (Mot. at 6), of subprime lending

7  unquestionably shows the effect of "tightened" underwriting standards.

8        Mr. Killinger further points to facts that plaintiffs allege *in their own Complaint* that

9  confirm the veracity of his statements. Mot. at 7. Plaintiffs cannot ignore these contradictions.

10  *Sprewell*, 266 F.3d at 988. The Opposition asserts that Mr. Killinger "disputes" the data presented

11  in plaintiffs' Chart 2 (Opp. at 11), when actually he just points out that it shows a "tightening" of

12  underwriting consistent with his statements. Mot. at 7. Retrenching, plaintiffs claim that this case

13  is not about WaMu's internal practices, but about how WaMu stacked up against its competitors –

14  citing to the *only* challenged statement making such a comparison. Opp. at 11; Ex. Y at 18

15  (statement that WaMu was trying to "lead" the industry to "more prudent and appropriate

16  underwriting").[2] Unfortunately for plaintiffs, Chart 2 also indicates that WaMu did, in fact, lead

17  its competitors in tightening underwriting. ¶¶ 238-39. Of the twelve companies shown, WaMu is

18  one of only five to show a tightening of guidelines and, according to plaintiffs' own data, made the

19  most dramatic change in loan-to-income ratios over the Class Period. *Id.*

20        ***Plaintiffs do not show Mr. Killinger's opinions were false or misleading.*** Many of Mr.

21  Killinger's statements were opinions by nature, as they made subjective judgments about the

22  quality of WaMu's credit and underwriting. Mot. at 9-10. Some are specifically preceded by

23  words such as "I think." Ex. H at 3; Ex. I at 3; Ex. Q at 6. In order to plead the falsity of these

24  opinions, plaintiffs must show they were both objectively and subjectively false. Mot. at 9-10.

25  Plaintiffs do not even try to meet this standard, attempting instead to evade it by alleging, without

---

[2] In evaluating the truth of this isolated industry comparison, it is important to look at what Mr. Killinger actually compared. The statement was in the context of announcing that, ahead of other lenders, WaMu was eliminating a variety of loan products, such as stated-income subprime loans and some adjustable-rate loans. Ex. Y at 9, 18.

KILLINGER'S REPLY ISO HIS MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
[OD-KKK-3]
MASTER NO.: 08-MD-1919 MJP

6

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

explanation, that "none" of Mr. Killinger's statements were opinions. Opp. at 11-12. A review of the statements demonstrates this is clearly not the case. Plaintiffs cannot show these opinions were objectively false because they do not assert contradictory contemporaneous facts, and do not provide a way to measure subjective evaluations. Mot. at 9-10. And apart from a cursory claim, plaintiffs do not even attempt to show that Mr. Killinger did not sincerely believe these opinions. Opp. at 11-12. Indeed, their weak scienter allegations indicate any such attempt would be futile.

### B. Challenged statements related to appraisals

Plaintiffs do not allege facts showing the falsity of statements about appraisals. In regard to some challenged statements, they do not even try. They never explain why Mr. Killinger's statement that LTVs were a "key determinant" of loan performance is allegedly false. Opp. at 14. They also fail to plead contemporaneous facts showing there was not a "strong governance process" over outside appraisers in September 2006, as Mr. Killinger stated. The Opposition merely reiterates that WaMu's appraisal process was corrupted "from the very initiation of outsourcing" (Opp. at 14-15; ¶ 117), but fails to identify facts substantiating this conclusion.

The challenge to statements about appraisals thus hinges on one key assertion. Plaintiffs allege that all statements regarding LTVs were misleading because the LTVs were "the product of" appraisal inflation. Mot. at 10-11. To make this claim, plaintiffs must plead facts to indicate that company-wide LTVs were significantly affected by appraisal inflation. This is *not* a materiality question, as plaintiffs insist (Opp. at 15), but bears directly on falsity. Mot. at 10-11. Yet plaintiffs not only fail to quantify the overall effect of alleged appraisal inflation, they also do not even allege facts to substantiate their claim that inflation was "widespread." *Id.* Rather, plaintiffs depend on vague, anecdotal accounts from a handful of CWs, none of whom were in a position to comment on company-wide conditions. Mot. at 11. (Plaintiffs say this contention "fails," but do not explain how. Opp. at 16.) Plaintiffs also do not resolve inconsistencies among CW statements, such as the claim that loan officers needed to inflate LTVs to make loans "work," with the claim that underwriting was so loose that "anyone with . . . a heartbeat" could get approved. Mot. at 12; Opp. at 17. Although plaintiffs latch onto the New York Attorney

KILLINGER'S REPLY ISO HIS MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
[OD-KKK-3]
MASTER NO.: 08-MD-1919 MJP

7

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

General's complaint, those allegations also do not show systematic, effective appraisal inflation. Mot. at 12; Opp. at 16. Finally, plaintiffs rely on a so-called "expert analysis" of housing data, but do not dispute that this data does not include key lending criteria such as LTVs and FICO scores. Without such facts, a comparison of reasons for mortgage denials is irrelevant. Mot. at 12.[3]

### C. Challenged statements related to risk management

Plaintiffs' risk management allegations are, at core, a disagreement with the level of WaMu's credit risk. Mot. at 13. Plaintiffs equate the function of risk management with the decision to make loans that had high risk-adjusted returns. Thus, while they criticize so-called "aggressive" lending policies, plaintiffs fail to identify a false statement about WaMu's risk management function. Opp. at 4-5. Risk management can be "on track" while lending practices are allegedly "aggressive." *Id*. Plaintiffs also fail to reconcile an inherent contradiction in the Complaint: While alleging risk management was "weakened" and did not provide "oversight," plaintiffs make scienter allegations that describe a *robust* risk analysis function, which allegedly supplied Mr. Killinger with plentiful information about risk. Mot. at 14; Opp. at 6; *infra* p. 11.

### D. Challenged financial statements

Nowhere is it more important to distinguish "facts" from "conclusions," and carefully examine the documents upon which plaintiffs rely, than in regard to their financial allegations. Loan loss reserves are estimates. Thus, plaintiffs must do more than allege that WaMu's allowance for loan loss reserves ("ALLL") should have been set differently, or that WaMu should have reserved for losses earlier. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626-27 (7th Cir. 1990). Plaintiffs have offered no facts to show that WaMu's ALLL was ever inadequate. Mot. at 15-17. Even if they had, they would still need to show "specific *contemporaneous* conditions" indicating the ALLL was improper, *and* quantify the amount by which it was improper. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091 (9th Cir. 2002). But they have done neither. Mot. at 15-17.

---

[3] In any case, consideration of this analysis is improper. Plaintiffs claim this "robust analysis" (¶ 161) is not a conclusion, but a "fact." The underlying data that plaintiffs do not provide is fact. The analysis of that data results in a "conclusion," and expert conclusions may not be considered under the Reform Act. Mot. at 3-4, 12. The case plaintiffs cite is not to the contrary, as it considers only *facts within* an expert report. Opp. at 17 (citing *Nursing Home Pension Fund v. Oracle Corp.*, 380 F.3d 1226, 1233-34 (9th Cir. 2004)).

KILLINGER'S REPLY ISO HIS MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
[OD-KKK-3]
MASTER NO.: 08-MD-1919 MJP

8

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

Quantification requires more than just making up a number. But that is exactly what plaintiffs have done. Plaintiffs now concede it is a violation of GAAP to set the ALLL based on only one factor. Opp. at 20. This concession invalidates their own methodology, which calculates ALLL based only on a random percentage of non-accrual loans. Mot. at 16. Even setting this fatal problem aside, the application of plaintiffs' methodology does not produce the numbers they assert. Mot. at 16-17.[4] Such inconsistencies doom their theory. *See* Opp. at 16 n.4 (citing *Vantive*, 283 F.3d at 1091). Indeed, plaintiffs now admit their analysis does not rely on facts at all. Instead, plaintiffs contend it is a "plausible" conclusion based on unknown "hypothetical" assumptions. Opp. at 22. A hypothetical conclusion is not a fact, and is entitled to no deference. Plaintiffs' "quantification" should thus be disregarded.

Unable to challenge the amount of WaMu's ALLL, plaintiffs allege that WaMu "failed to adequately consider" appropriate factors in setting it. Opp. at 20. But plaintiffs allege *no facts* about what factors WaMu did, or did not, consider in estimating its ALLL. Opp. at 20. Their primary allegation regarding WaMu's Loan Performance Risk Model ("LPRM") distorts the documents on which it relies. Mot. at 17-18. While the Complaint asserts that the "CRO Report" found the LPRM "did not account for the performance of the Company's Option ARM loans" (¶ 311), this is not what the report says. It merely found the LPRM was "untested" on products with the potential to negatively amortize. Mot. at 18; Ex. NN at 4. In management's response, it is further clarified that the issue is only with the "documentation of the validation" of the LPRM, since the LPRM had, in fact, been *predominantly* validated on loans subject to negative amortization. Ex. OO at 7. Plaintiffs allege no facts indicating the CRO Report questioned the reasonableness of the ALLL, or that any problems were not corrected. Mot. at 18; Opp. at 19-24. Indeed, the CRO Report itself emphasizes that "the issues identified were not of a nature that impacted the reasonableness of the ALLL from a financial reporting perspective." Ex. NN at 3.

Plaintiffs' only other allegation regarding methodology relies on a third-hand allegation

---

[4] Plaintiffs ask the Court to ignore these calculations, on the pretext that they are in an appendix to the Motion. Opp. at 22. However, the Motion contains the primary assertions. Mot. at 17. Ironically, plaintiffs call this analysis "rudimentary," apparently not recognizing the methodology they set forth in the Complaint. Opp. at 22; ¶ 326.

KILLINGER'S REPLY ISO HIS MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
[OD-KKK-3]
MASTER NO.: 08-MD-1919 MJP

9

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

that the LPRM had not been "calibrated" for 18 months. Mot. at 17. This assertion fails to meet Reform Act standards for credibility, since it stems from an unknown source, and there is no way to judge if that person was in a position to know this information. Mot. at 3-4. Regardless, it is meaningless without specific facts, and plaintiffs provide none. The Opposition fails to point to any facts about what "calibration" entails, how often it should be done, or what the effects were of the alleged failure to calibrate on WaMu's ability to predict *current or future losses*. Opp. at 23 (indicating LPRM did not retrospectively match historical data, which it is not designed to do).

## II. PLAINTIFFS DO NOT CREATE ANY INFERENCE OF SCIENTER

Plaintiffs fail to make allegations that support *any* inference of scienter, much less the required "strong inference." Under the Reform Act, which plaintiffs studiously ignore, they must allege that Mr. Killinger, *specifically*, knew *each* statement was false, or was reckless as to its falsity. Order at 10; Mot. at 5. Plaintiffs do not even come close to this standard.

Plaintiffs do not make a single direct allegation that Mr. Killinger knew contemporaneous facts rendering his statements false. Mot. at 19-20. The Opposition asserts that plaintiffs make "detailed allegations" showing "Killinger's day-to-day involvement in . . . fraud." Opp. at 2, 7. But plaintiffs do not cite *any facts* to support this claim. Rather, they set forth a hodgepodge of vague and irrelevant assertions, many of which are not even about Mr. Killinger. For example, in regard to appraisals, plaintiffs assert that 1) the Office of Thrift Supervision ("OTS") sent Mr. Killinger a letter telling him WaMu should safeguard appraisals from improper influence; 2) the alleged appraisal fraud was directed by WaMu's "senior management"; and 3) if Mr. Killinger did not know of the alleged inflation, that shows he was "reckless." Opp. at 17-18. ***That is it.***

These allegations are so weak that they barely merit a response. First, the OTS letter said only that WaMu should ensure the independence of appraisals. As a huge company in a highly-regulated industry, WaMu had many regulatory obligations, the existence of which have no bearing on whether Mr. Killinger knowingly made false statements. Second, allegations against "senior management" say nothing about Mr. Killinger's scienter. WaMu had many hundreds of presidents, vice-presidents, and branch managers at the national, regional, and local level – all of

KILLINGER'S REPLY ISO HIS MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
[OD-KKK-3]
MASTER NO.: 08-MD-1919 MJP

10

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

whom CWs might describe as "senior management." Opp. at 13; Mot. at 8. Without specific allegations that identify each defendant by name, and assert particularized facts as to each defendant, plaintiffs cannot meet the requirement that scienter be alleged *specifically* as to each defendant. Order at 11-12; Mot. at 5. Finally, Mr. Killinger could not possibly have personal knowledge of whether the actions of every employee comported with all federal regulations, and nowhere do the securities laws indicate that the lack of such knowledge is "reckless."

In regard to the other claims, plaintiffs make additional scienter allegations that Mr. Killinger 1) received various financial and risk exposure reports; 2) discussed these issues at meetings; 3) monitored WaMu's lending policies; and 4) received warnings from a former WaMu executive that the housing market was becoming risky. Opp. at 6-7, 12-14, 23-24. These allegations can be disposed of quickly. The law is clear that in order to be probative of scienter, allegations of discussions at meetings, or receipt of negative internal reports, must include a detailed description of the contents of those reports or discussions. Mot. at 19. Plaintiffs do not allege a single specific fact contained in a single report read by Mr. Killinger, or mentioned in a single meeting he attended, that contradicts a single one of his public statements. Opp. at 6-7, 13, 23. And plaintiffs cite no authority for the remarkable claim that Mr. Killinger was reckless if he did *not* read *all* of these daily, weekly, and periodic reports containing unspecified information. Opp. at 7. The claim that Mr. Killinger was knowledgeable about WaMu's lending practices is similarly bereft of any facts indicating he knew information making his statements false. Opp. at 6, 13; ¶ 87. Allegations that "Killinger and Rotella" issued quarterly emails and statements also cite no specific facts about what Mr. Killinger said or knew. ¶¶ 241-42; Opp. at 13. Finally, William Longbrake's statements are *consistent* with Mr. Killinger's candor. Opp. at 6. When Mr. Longbrake was allegedly warning the WaMu board that the housing market was "risky," Mr. Killinger was discussing the same concerns with investors – *throughout* the Class Period. Mot. at 10; *see, e.g.*, Ex. A at 5 ("we maybe [sic] entering a period of industry shakeout"); Ex. C at 6 ("you have heard my conservative voice on the housing market for several quarters").

Lacking direct allegations of scienter, plaintiffs try to cobble together various inadequate

**KILLINGER'S REPLY ISO HIS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT [OD-KKK-3]**
MASTER NO.: 08-MD-1919 MJP

11

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

claims to create the aroma of fraud and invoke the so-called "core operations inference." But this inference applies only in "extremely rare circumstances" where the facts showing falsity are so strong, and bear so directly upon *the* core operation of a company, that it would be "absurd to suggest" a senior manager was unaware of them. Mot. at 23. Mr. Killinger challenged plaintiffs to identify 1) the specific *facts* on which they base their falsity allegations, and 2) the reasons why it is "absurd to suggest" that Mr. Killinger did not know that these *facts* rendered his statements false. *Id.* Plaintiffs ignored this challenge, and cannot meet it. To show falsity, plaintiffs offer only vague assertions, largely concerning activity at the branch level. They do not assert a single, clear-cut fact demonstrating the falsity of a statement, much less a fact that would have been so obvious in WaMu's daily operations that it is "absurd to suggest" Mr. Killinger was unaware of it. Rather, plaintiffs assert only that lending was *one of* WaMu's core businesses, and Mr. Killinger was WaMu's CEO. Opp. at 18. Mr. Killinger disputes neither of these obvious observations, but they come nowhere close to supporting the core operations inference.[5]

Ignoring the mandate of *Tellabs*, plaintiffs make no attempt to counter the much stronger opposing inference that Mr. Killinger acted with innocent intent. 127 S. Ct. at 2504. But the facts show that Mr. Killinger made statements he believed to be true, and acted to try to protect the company in which he had invested his career and his reputation. Mot. at 23-24. Mr. Killinger does not say he lost 95% of his equity in WaMu in order to contend he is "the ultimate victim" (Opp. at 2), but rather to support the obvious inference, inconsistent with scienter, that he believed in WaMu's future. And despite plaintiffs' assertions that Mr. Killinger "ignored" negative information, the opposite is true. He repeatedly warned investors of the danger of an economic downturn and took steps to limit WaMu's exposure. Mot. at 24; Ex. S at 11; Ex. W at 4-5. In the end, Mr. Killinger, along with the Federal Reserve, and analysts and executives around the world, could not predict the severity of the economic collapse. That plainly is not securities fraud.

---

[5] Plaintiffs do not dispute that "motive" allegations (Opp. at 24), standing alone, cannot create a strong inference of scienter. Mot. at 20. Nor do they contest that none of the other defendants are alleged to have sold stock, despite a lengthy Class Period, or that Mr. Killinger sold only 5% of his shares, losing the vast majority of his equity. Such factors actually weigh *against* any finding of scienter, and in favor of the opposing, innocent inference. *Id.* at 20-22.

KILLINGER'S REPLY ISO HIS MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
[OD-KKK-3]
MASTER NO.: 08-MD-1919 MJP

12

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

| | | |
|---|---|---|
| 1 | Dated: August 25, 2009 | |
| 2 | | By: _s/ Barry M. Kaplan_ |
| 3 | | Barry M. Kaplan, WSBA #8661<br>Douglas W. Greene, WSBA #22844 |
| 4 | | Daniel W. Turbow (*pro hac vice*)<br>Claire L. Davis, WSBA #39812 |
| 5 | | **WILSON SONSINI GOODRICH & ROSATI**<br>Professional Corporation |
| 6 | | 701 Fifth Avenue, Suite 5100<br>Seattle, WA 98104-7036 |
| 7 | | Tel.: (206) 883-2500<br>Fax: (206) 883-2699 |
| 8 | | Email: bkaplan@wsgr.com<br>Email: dgreene@wsgr.com |
| 9 | | Email: dturbow@wsgr.com<br>Email: cldavis@wsgr.com |

**KILLINGER'S REPLY ISO HIS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT [OD-KKK-3]**
MASTER NO.: 08-MD-1919 MJP

13

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who receive CM/ECF notification, and I hereby certify that I have mailed the foregoing document by United States first class mail to the non-CM/ECF participants indicated on the Court's Manual Notice List.

Dated: August 25, 2009

             s/ Barry M. Kaplan
             Barry M. Kaplan, WSBA# 8661

**KILLINGER'S REPLY ISO HIS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT [OD-KKK-3]**
MASTER NO.: 08-MD-1919 MJP

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699