UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation | CASE NO. 08-md-1919 MJP<br><br>LEAD CASE NO.: C08-387 MJP |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>C09-664 MJP<br><br>C09-816 MJP | ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS |

  This matter comes before the Court on the Director Defendants' and Deloitte & Touche LLP's motions to dismiss Plaintiffs' second amended consolidated complaint, in which the Officer Defendants and Defendant Kerry Killinger join. (Dkt. Nos. 73, 74, 75, 76.[1]) Having reviewed the motions, the response (Dkt. No. 81), the replies (Dkt. Nos. 82, 83, 84), and all relevant papers, the Court DENIES in part and GRANTS in part the motions. The Court finds this matter suitable for decision without oral argument.

---

[1] All references to the docket refer to C09-664.

**Background**

This action is brought by the City of San Buenaventura (the "City") and Lou Solton on behalf of the Monterey County Investment Pool (the "County") (collectively, "Plaintiffs"). Both purchased WaMu notes. The Court previously examined the sufficiency of Plaintiffs' pleadings on Defendants' first round of motions to dismiss. (Dkt. No. 63.) The Court dismissed Plaintiffs' fraud and misrepresentation claims because Plaintiffs failed to allege reliance sufficiently to survive dismissal. (Id.) The Court also dismissed Plaintiffs' California Corporations Code claim, which Plaintiffs no longer pursue. (Id.; Dkt. No. 70.) Plaintiffs have filed an amended complaint, adding greater detail as to reliance, and dropping Deloitte & Touche LLP ("Deloitte") as a defendant to the misrepresentation claim. (Dkt. No. 70.) The Court's first order on the motions to dismiss sets forth the underlying allegations, which are not repeated here.

The County provides much greater detail as to its reliance on WaMu's filings with the Securities and Exchange Commission ("SEC").[2] The County now alleges that Solton and his assistant "received and maintained detailed research analytical information about the County's investments, including the subject note with WaMu." (Second Consolidated Amended Complaint ("Compl." or "¶") ¶ 356.) They used a Bloomberg terminal to get access to SEC filings and worked with Sam Butine of Credit Suisse Securities to get advice as to the WaMu note. (Id.) Plaintiff Solton (also defined as "the County" in the complaint) alleges that:

> [a]s a result of its research and analysis, as well as its communications with Butine, the County read and relied upon WaMu Forms 10-K, including the 2005 and 2006 Forms 10-K, and the Deloitte certifications and audit reports contained therein, in the days prior to its purchase of the WaMu note in July 2007.

---

[2] The following allegations are taken from the Second Consolidated Amended Complaint and are accepted as true solely for the purpose of deciding the pending motions. Nothing should be construed as acceptance of these allegations as proven fact.

(¶ 357.) The County alleges that "[i]t is probable, if not certain, that the County would not have purchased the WaMu note absent the misrepresentations and concealment of information in the 2005 and 2006 Forms 10-K." (Id.) Plaintiffs define the "County" as synonymous with Solton. (Compl. at 1.)

The County also alleges that it suffered holder damages when it read and relied on the 2007 Form 10-K and the 2007 Form 10-K/A and continued to hold the note. The County states it "received and reviewed the 2007 Form 10-K, both directly through its Bloomberg system and through its advisor, and relied upon such misrepresentations and concealments in deciding to hold on to its note." (¶ 363.) The County also details that had it known the truth on February 29, 2008 it would have sold all of its interest in the WaMu note. (Id.) The County makes the same allegations with regard to the 2007 Form 10-K/A. (Id., ¶ 364.)

The City alleges that its treasurer Jay Panzica monitored the City's investments and worked with Ben Finkelstein at Stanford Group in the acquisition of the WaMu note. (¶ 359.) The City does not allege it read the 2005 and 2006 Forms 10-K. Instead, it alleges that Finkelstein "had access to and reviewed WaMu's public filings, including its Forms 10-K for 2005 and 2006" and that he "communicated with the City regarding the disclosures made therein." (¶ 359.) The City details the contents of the Forms 10-K that were material to its decision to purchase the note. (¶ 360.) The City alleges that "[a]s a result of it research and analysis, as well as its communications with Finkelstein, the City relied upon WaMu Forms 10-K, including the 2005 and 2006 Forms 10-K, and the Deloitte certifications and audit reports contained therein, in the days prior to its purchase of the WaMu note" in September 2007. (¶ 360.) The City alleges that had it known of WaMu's true condition, it would not have purchased the WaMu note. (Id.)

As to holder allegations, the City makes no allegations that it or Finkelstein read the 2007 Forms 10-K and 10-K/A. Instead, the City alleges it "was informed of the contents of the 2007 Form 10-K through its advisor, and relied upon such misrepresentations and concealments in deciding to hold on to its note." (¶ 363.) The same allegation is made as to the Form 10-K/A. (¶ 364.) Nowhere does the City explain who may have read these filings and how they were communicated. Like the County, the City alleges it would have sold its entire WaMu note on both February 29, 2008 and May 22, 2008. (¶¶ 363-64.) The City alleges "[i]t is probable, if not certain that the City would not have continued to hold the WaMu note absent the misrepresentations and concealment of information in the 2005 and 2006 Forms 10-K" and that had WaMu's true condition and Deloitte's false certifications been revealed, "it would have immediately sold its entire interest in its WaMu note." (Id.)

The Directors Defendants have filed a motion to dismiss in which the Officer Defendants and Kerry Killinger have joined. (Dkt. Nos. 73, 74, 75.) Deloitte has also filed a motion to dismiss. (Dkt. No. 76.) The Defendants only challenge the adequacy of the allegations as to reliance.

**Analysis**

A.   Pleading Standard

Plaintiffs' fraud and negligent misrepresentation claims must satisfy Rule 9(b), as the Court previously held. (Dkt. No. 63 at 4-5.) To sustain their fraudulent misrepresentation claims, Plaintiffs must allege in accordance with Rule 9(b) that (1) Defendants made misrepresentations or omissions; (2) Defendants knew of the falsity (scienter); (3) Defendants had an intent to defraud or to induce reliance; (4) Plaintiffs justifiably relied on Defendants'

statements or omissions; and (5) Plaintiffs suffered damages. Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 173-74 (2003). Only the issue of reliance is in play in the pending motions.

A cause of action for "deceit based on a misrepresentation" requires the plaintiff to allege that "he or she actually relied on the misrepresentation." Mirkin v. Wasserman, 5 Cal. 4th 1082, 1088 (1993). The plaintiff must allege "specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place." Small 30 Cal. 4th at 184. "The plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations." Id.

Plaintiffs argue there is a presumption of reliance, but rely on inapposite case law. (See Dkt. No. 81 at 13 (citing Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951 (1997)).) As Defendants point out, the plaintiffs in Engalla alleged that every class member read and relied on the statements made, and thus were entitled to a class-wide presumption of reliance. As the California Supreme Court clarified in Mirkin, this decision "do[es] not support an argument for presuming reliance on the part of persons who never read or hear the alleged misrepresentations." 5 Cal. 4th at 1094 (citing Vasquez v. Superior Court, 4 Cal. 3d 800 (1971) (a case on which the Court in Engalla relied primarily—see Engalla, 15 Cal. 4th at 977)). There is no presumption of reliance here because the parties dispute whether or not Plaintiffs did in fact read the SEC filings. There is also no ability to rely on the fraud-on-the-market presumption, as Plaintiffs admit. (Dkt. No. 81 at 9.)

B.     Reliance Allegations at the Time of Purchase

1    The County has now adequately alleged that it read and relied on the 2005 and 2006
2    Forms 10-K in deciding to purchase the WaMu note. In examining the pleadings, the Court
3    notes that Plaintiffs define the "County" interchangeably with Solton. (Compl. at 1.) The
4    County alleges that "[a]s a result of its research and analysis, as well as its communications with
5    Butine [the investment advisor], the County read and relied upon the WaMu Forms 10-K . . . in
6    the days prior to its purchase of the WaMu note in July 2007." (¶ 357.) The phrase "[a]s a result
7    of its research and analysis," is curious. It could be read as a qualifier to mean that the County
8    and Solton never actually read the SEC filings. However, the Court construes the pleadings
9    liberally and accepts Plaintiffs' perhaps inartful statement that the County/Solton actually read
10   the 2005 and 2006 Forms 10-K. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) ("the
11   complaint is to be liberally construed in favor of plaintiff"), reh'g denied, 396 U.S. 869 (1969).
12   The County now alleges that it would not have purchased the WaMu note had it known the truth
13   about WaMu's financial condition with sufficient specificity to satisfy Rule 9(b). The Court
14   accepts the pleading and DENIES the motions on this issue.

15   The City's allegations are also sufficient to survive dismissal. As an initial matter, the
16   Court accepts that the City can allege indirect reliance to survive dismissal so long as the
17   allegations contain adequate specificity. See Mirkin, 5 Cal. 4th at 1098. The City alleges that its
18   investment advisor, Finkelstein, acted as the City's agent and read the Forms 10-Ks for 2005 and
19   2006. (¶ 359.) Finkelstein allegedly "communicated with the City regarding the disclosures
20   made" in the Forms 10-K, and the City alleges "in the days prior to its purchase," it relied on
21   these disclosures in deciding to make its purchase of the WaMu note. (¶ 359; ¶ 360.) While
22   Plaintiffs could have added greater detail as to the contents of Finkelstein's communications, the
23   Court finds that the allegation, when read in context of the surrounding paragraphs, suffices to
24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANTS' MOTIONS TO DISMISS- 6

1 show that the City was informed of the alleged misrepresentations. The allegations show

2 sufficient detail and particularity to survive dismissal, even under Rule 9(b). The Court DENIES

3 the motions to dismiss on this issue.

4 C.      Reliance as to Holder Claims

5      As to holder damages, the Plaintiffs must allege "that if the plaintiff had read a truthful

6 account of the corporation's financial status the plaintiff would have sold the stock, how many

7 shares the plaintiff would have sold, and when the sale would have taken place." Small, 30 Cal.

8 4th at 184.

9      The County's allegations as to reliance are adequate. The County states that it "received

10 and reviewed the 2007 Form 10-K, both directly through its Bloomberg system and through its

11 advisor, and relied upon such misrepresentations and concealments in deciding to hold on to its

12 note." (¶ 363.) For purposes of deciding this issue, the Court accepts that the word "reviewed"

13 adequately encompasses the word "read." The County does not expressly state the date when it

14 read the disclosure. However, analyzing the allegation in its entirety, the Court finds that the

15 date of reading is the same day WaMu made the SEC filing because the County alleges it would

16 have sold its WaMu note the day the 2007 Form 10-K was filed. It cannot allege that it would

17 have sold the note prior to having actually read the Form 10-K. The County provides a detailed

18 statement that had it read an accurate disclosure from WaMu in the 2007 Form 10-K it would

19 have sold all of its interest in the WaMu on the date the filing was made. (Id.) The County

20 makes the same allegations as to the 2007 Form 10-K/A. These allegations are adequate under

21 Small, 30 Cal. 4th at 184. The Court DENIES the motions on this issue

22      The City fails to allege sufficient reliance to sustain a holder claim. Nowhere does the

23 City allege that it or its advisor actually read the 2007 Form 10-K or 10-K/A. In its allegations

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANTS' MOTIONS TO DISMISS- 7

as to the acquisition of the WaMu note, the City expressly stated that Finkelstein "reviewed" the 2005 and 2006 Forms 10-K. (¶ 359.) No similar allegation appears as to the 2007 Forms 10-K and 10-K/A. Instead, the City states that it was "informed of the contents of the 2007 Form 10-K through is advisor." (¶ 363.) This allegation is insufficient because the City does not also allege that Finkelstein or any other advisor actually read the SEC filings. Without this specific allegation, the City has failed to allege a holder claim. The Court GRANTS the motion to dismiss on this issue. The City has not alleged adequate reliance to sustain its holder claim, but it may pursue a claim for purchaser damages.

D.   Justifiable Reliance

The Director Defendants argue that Plaintiffs have not shown their reliance was justifiable because they allege access to adverse information prior to the date they claim they would have sold their stock. (Dkt. Nos. 73 at 14-15.) This inquiry is highly factual, and it is not ripe for decision at this stage of the litigation. See OCM Principal Opportunities Fund v. CIBC World Markets Corp., 157 Cal. App. 4th 835, 864 (2007).

**Conclusion**

The Court DENIES the motions to dismiss as to the County's purchaser and holder claims. The amended complaint adds sufficient detail of specific reliance to survive dismissal. The Court DENIES in part and GRANTS in part the motions to dismiss the City's claims. Although the allegations as to the purchaser claim are sufficiently detailed, the City fails to make sufficient allegations that it or its agent actually read the 2007 Forms 10-K and 10-K/A. The City may not pursue holder-related claims.

\\

\\

1  The clerk is ordered to provide copies of this order to all counsel.

2  Dated this 25th day of October, 2010.

3

4

5  *[signature]*

    Marsha J. Pechman

6      United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANTS' MOTIONS TO DISMISS- 9